# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## ROMIG, Administrator of ROMIG, *against* ROMIG.

In an action of trover brought by administrators for certain bonds, given to the intestate by the defendant, who refused to surrender them, on the ground that they had been given up to him by the intestate, who was his father, the declarations of the intestate, made in the absence of the defendant, tending to negative the allegation of the defendant, were *held* not to be admissible in evidence.

In trover for bonds, the measure of damages is the amount which may be recovered on them.

Therefore, where an intestate had agreed to convey to the defendant a tract of unpatented land, by "a good deed or lawful conveyance," and bonds were given for the consideration money, which bonds afterwards came into the hands of the defendant, in an action of trover for the bonds, by the intestate's administrators, the defendant may prove, by way of defence, that he paid for patenting the land, for the funeral expenses of the intestate, and that he had worked for the intestate, who had promised to pay him for his services.

THIS cause was tried before Mr. Justice ROGERS, at a Circuit Court held in *Lehigh* county on the 15th of *April*, 1829.

The action was trover by *Jacob Romig*, administrator of *Jacob Romig*, deceased, against *Peter Romig* for certain bonds, in the possession of the defendant, and alleged to belong to the estate of the intestate. On the 17th of *March*, 1818, an agreement was entered into between *Jacob Romig*, sen., the plaintiff's intestate, and his son, *Peter Romig*, the defendant, by which the former agreed, in consideration of natural love and affection, for the maintenance of the said *Jacob Romig* and his wife, the sum of fifteen hundred pounds, and also, of the defendant's portion, to convey to the defendant one hundred and twelve acres and thirty eight perches of

(Romig, Administrator of Romig, *v.* Romig.)

land in *Marenjo* township, and a tract of wood land, consisting of twenty-eight acres and eighty perches, in *Longswamp* township, and to give him "a good deed or lawful conveyance" for the same. Of the fifteen hundred pounds, two hundred dollars were to be paid down, and the residue in yearly payments of two hundred each, until the whole should be paid; and for these annual payments, nineteen bonds were given. Ten of them had been paid, and the remaining nine were the subject of the present suit. During the latter part of the intestate's life, the bonds were in his possession, but they were subsequently traced to the possession of the defendant, who, on demand being made, refused to deliver them up to the plaintiff, alleging they had been given to him by his father; to establish which he produced evidence. The plaintiff, on the other hand, produced evidence to destroy the defendant's allegation. It will be necessary, however, to state only such parts of the evidence as are connected with the points raised in this court.

*John Butz,* (whose evidence was objected to by the defendant's counsel, but admitted by the court,) testified as follows:—

"I had a bond against *Peter Romig,* which I got of *Isaac Klein.* I had money to pay to *Peter Romig,* and I gave him this bond in payment. The bond was given by *Peter Romig* to his father. I had two bonds from *Isaac Klein,* which *Peter Romig* had given to his father. I cannot tell the amount of credit which I got. There was interest on the bonds. I am not sure, but I think there was a witness in the bonds. I think the amount due on the bonds amounted to four hundred and nineteen dollars. I delivered up these bonds to *Peter Romig.* I cannot say when it was, but I think it was the 9th or 10th of *June,* 1828. I had the bonds about a month, or a little better, in my possession. The principal sums of the bonds were two hundred dollars each. I cannot tell when they were payable." On being cross-examined, he said, "I own this land now. It is patented. *Peter Romig* patented the land. The plantation was patented by him. The wood land was patented before."

*Philip Romig,* another witness produced by the plaintiff, after having stated that old *Jacob Romig* had put into his hands, for safe-keeping, a number of bonds wrapped up in paper, that he did not see the inside of the bundle, but knew it contained bonds, was permitted, notwithstanding the evidence was objected to by the defendant's counsel, to testify as follows:—

"The old man told me to take care of the bonds for him; he could not always carry them in his pocket. At that time the old man lived with *Peter.* I cannot tell how long this was before the old man's death, but it may have been three years and a half. The bundle was as thick as this book, (*Wharton's Digest;*) may be not so thick, neither. The bonds were with me about two years, be the same more or less. The old man then told me I should give him the bonds; he wanted to see something in one of the bonds. I

(Romig, Administrator of Romig, *v.* Romig.)

delivered the bonds to him.   He did not say what he wanted to do with the bonds."

*Abraham Romig* was also called by the plaintiff's counsel to prove what the intestate had said to him relative to the bonds in question.   His evidence was objected to by the defendant's counsel, but admitted by the court.   It was as follows:—

"I lived in *Allentown.*   The old man and *Peter* came to my house.   The old man staid at my house.   He came in, and complained of feeling unwell, and that he was sued by Dr. *Mathews,* and he should have bail, and had none.   I said *Peter* would enter special bail for him.   He said he would not do it.   Then I said he should remain at my house, and I would go to *Peter.*   I did, and told him he should go bail for his father.   *Peter* said he would not do it.   I said to him, he could do it; it would not injure him.   *Peter* declared he would not do it.   I went back to the old man, at my house, and asked him if he had no bonds against *Peter.*   He said, yes; he had fifteen in his pocket.   I told him I would give him advice: he should go to *Mathews* and give him of those bonds and get free.   He went, and after a while he came back, and said he was now clear.   He had traded a bond for the debt.   The old man said the bonds were each for two hundred dollars.   I think this was five years since."

The plaintiff offered in evidence the record of a judgment obtained on the 5th of *April,* 1824, for one hundred and sixty-two dollars by *Mathews* against *Jacob Romig,* the intestate, and the record of another judgment for ninety-five dollars and eighty-five cents, obtained the 8th of *September,* 1825, by *Frederick Wolbert* against the said *Jacob Romig.*   Both these records were objected to by the defendant's counsel, but the court permitted them to be given in evidence.

The defendant, as part of his defence, alleged and gave evidence to support the allegation, that he had worked for his father during the period of sixteen years after he came of age, and claimed twelve hundred dollars for his services.   He also proved, that, since the institution of this suit, he had paid four hundred and forty-three dollars and seventy-six cents for obtaining patents for the lands, for which the bonds were given.   He also offered to prove that he had paid the funeral expenses of his late father.   This last mentioned evidence was objected to by the plaintiff's counsel, and the court rejected it.

At the close of the trial, His Honour charged the jury in substance as follows:—

"This is an action of trover, and the plaintiff's claim is for the taking and conversion of certain bonds.   The action is founded on a fiction of law which supposes a loss of the article in question, and a finding by the defendant.   But the action is, in fact, to try the right of property.

"The question is, whether the plaintiff or defendant is entitled to the property.   It is purely a question of property, not a question

(Romig, Administrator of Romig, *v.* Romig.)

of larceny. The defendant may have got them by gift; but the burden of proof lies on him. It is necessary for the defendant to prove how he got the bonds, and the ordinary proof would have been very plain. The presence of a witness at the transaction, or declarations by the deceased, that he had given them to him: this proof should be expected by a jury. The whole burden of proof does not lie on the plaintiff, but on the defendant. There may be circumstances to induce the belief without this express proof. But such proof of circumstances should be satisfactory.

" The defendant relies on the bonds being in his possession, cancelled;—the declaration of the deceased to other persons of his intention, and the defendant's own declaration.

" It appears that *Peter Romig* is in possession of the bonds. I regret that the old woman has been examined: there were conversations between her and the other witnesses, and they contradicted her as to certain other matters.

" You need not investigate the matter of how the defendant got the bonds. The question is, in whom is the property of them. Evidence has been relied on, as showing the intention of the deceased to give the defendant the bonds. The intention to give is one thing, the actual giving another. All the confessions of a party are to be given in evidence; but the jury are not bound to believe all. You can examine, and adopt what you please, and reject what you please."

[His Honour here stated the facts which occurred at the funeral, as detailed by the witnesses.]

" *Peter*, acknowledging that he had the bonds, gives different accounts of how he got them. To one he says he got them in the summer, when it was rainy; to another two or three weeks before. To another one or two weeks; and, to another, he says he got them on the 25th or 26th of *September*. We should have expected a uniform statement from him, giving the same account at all times. At one time he says the bonds were uncancelled; at another, that the old man tore the name out. If he has given different accounts, you will say what reliance you will place on any of them. It would be dangerous to establish a gift under these circumstances. If so, who would be safe? It would be holding out a temptation to fraud, to the prejudice of others. I ask you, as members of society, to reflect seriously on this.

" If *Peter* has failed in the proof of the gift, the remaining question is the measure of damages. By the contract entered into on the 17th of *March*, 1818, the most material is, that the defendant was to pay his father four thousand dollars, two hundred down, and three thousand eight hundred in gales of two hundred each, every year. Nineteen bonds were given, payable from *February* 1st, 1819, to 1837, two hundred dollars each, without interest, till due.

" The defendant has only produced ten bonds which are paid. Nine are not paid, and the defendant should account for them. The

(Romig, Administrator of Romig, *v.* Romig.)

measure of damages is only what is the present worth if they are not paid: if paid, the damages are merely nominal.

" As to the question raised by the defendant that he ought to be paid for his services, the probability is, that that was settled in the contract. But, if it was not, it cannot be tried here. The defendant should have given up the bonds, and he could have set that claim up as a defence to suits on them.

" So, too, as to the patenting of the lands—the defendant should show that the deceased was to patent the land for him: if he did, it would not be a payment of the bond, but a defence to a suit on the bond."

A verdict having passed for the plaintiff, the defendant's counsel moved for a new trial, for which he filed the following reasons:—

1. The judge erred in admitting the declarations of the intestate made in the absence of the defendant.

2. The court erred in permitting the plaintiff to give evidence of the contents of the bonds, no notice having been given to produce them, and no evidence having been given of their due execution.

3. The court erred in admitting in evidence the record of the suits of *Mathews* against *Jacob Romig*, and *Wolbert* against *Jacob Romig*.

4. The court erred in refusing to permit the defendant to give evidence of the amount of the funeral expenses of the deceased paid by him.

5. The court erred in charging the jury that the burden of proof lay on the defendant to show that the bonds were paid by, or given to him; and that, as there was no witness present, the proof of circumstances ought to be very full and satisfactory to satisfy the jury that the intestate gave them up to him; the bonds being in the defendant's possession cancelled.

6. That the court erred in charging the jury as to the measure of damages, supposing the defendant to have established the fact, that he was entitled to claim from the intestate the amount which it would cost to patent the lands; and that he had performed services for his father for which he had not been recompensed, which, together, amounted to a larger sum than the present value of the bonds in dispute.

7. That the court erred in saying that the defendant was answerable for the bonds due in 1829, when there was no proof of any such bonds ever having been executed, or having come into the possession of the defendant.

8. That, supposing the plaintiff was entitled to recover, the verdict is too large in amount.

His Honour overruled the motion for a new trial, wherefore the defendant appealed.

*J. M. Porter*, for the appellant.

1. The declarations of the intestate in his own favour, made in the absence of the defendant, were erroneously admitted. Such

evidence is excluded, in general, by a rule as familiar and well established as any known to the laws; and there is nothing in the present case to form an exception to it. If these declarations were intended to affect the defendant, they were clearly not evidence; and if not, they were irrelevant, and consequently inadmissible. It is impossible to calculate where the mischief will end, if the declarations of a party, or of those under whom he claims, can be given in evidence. The intestate and the defendant were, so far as regards this transaction, mere strangers to each other: it is, therefore, an error to say that the declarations given in evidence were those of a person under whom both parties claimed. The plaintiff claimed under the intestate, but the defendant did not. His defence rested on having paid the bonds, which was shown by their being in his hands cancelled. *Blight* v. *Ashley*, 1 *Peters's Rep.* 15. *Scull and Others* v. *Wallace's Executors*, 15 *Serg. & Rawle*, 231. *Willis* v. *Church*, 5 *Serg. & Rawle*, 190. *Gray* v. *Goodwin*, 7 *Johns.* 96. *Wilson* v. *Boerem*, 15 *Johns.* 290.

2. Mr. *Porter* was about to argue, that evidence ought not to have been admitted of the contents of the bonds, without a previous notice to produce them; but the court having intimated that they considered it settled, that when an instrument is the subject of the suit no such notice need be given, he abandoned the point.

3. The measure of damages in trover, is the value of the thing converted. The value of a bond is the amount which can be recovered on it. Hence it follows that, when the defendant has claims upon the plaintiff which will extinguish part of the sum originally due upon the bond, the standard of damages must be the balance remaining due. Where his claims absorb the whole amount, as in this case, the damages are merely nominal. The judge was, therefore, wrong in excluding the evidence offered by the defendant of having paid the funeral expenses of the intestate, and in instructing the jury that his claim for services and patenting the land did not constitute a defence in this suit. *Heck* v. *Shener*, 4 *Serg. & Rawle*, 249.

4. Another part of the charge did great injustice to the defendant: it was, that although the bonds lying in the defendant's hands were cancelled, the burden lay upon the defendant to show how he got them. This is in direct contradiction of two decisions of this court, which establish the position, that possession is *prima facie* evidence of payment. *Zeigler* v. *Gray*, 12 *Serg. & Rawle*, 42. *Weidman* v. *Schweigart*, 9 *Serg. & Rawle*, 385.

*Davis* and *T. Sergeant*, contra, were desired by the court to confine their arguments to the points, whether the declarations of the intestate were admissible in evidence, and whether the matters of set-off, relied upon by the defendant, constituted a defence.

1. They referred to the evidence of *Philip* and *Abraham Romig*, and after recapitulating it, observed, that there were many exceptions to the rule by which the declarations of a party were excluded. It would often be impossible to show the circumstances

(Romig, Administrator of Romig, *v.* Romig.)

under which an act is done, or the intent of the party in doing it, except by his declarations at the time. For this reason the declarations of a bankrupt are admissible to show intention, as part of the *res gestæ.* Here the declarations of the intestate were part of the *res gestæ;* they tended to show the character of the whole transaction. They were, moreover, evidence, as coming from a party under whom the defendant claimed.

2. To permit the defendant to deduct the money paid for patenting the land, even in an action on the bond, would be to permit him to break in upon the shares of the other children, which ought not to be done. But supposing such evidence proper in a suit on the bond, it by no means follows that either this, or any other matter relied on by the defendant, can be received in an action of trover for the bond. Disguise it as he may, it is an effort to introduce a set-off in an action for unliquidated damages, and to force the plaintiff to try two issues, when he came prepared to try but one. The plea of set-off admits the plaintiff's right to sue, and that the defendant has committed a wrong. Can he then convert an acknowledged wrong into an act giving him a right? If he can, a man may always pay himself by seizing the property of his debtor, and thus a scuffle will be invited between creditors to get the first possession. A set-off in trover was never heard of, and is clearly not within the provisions of our defalcation act.

The opinion of the court was delivered by

SMITH, J.—The appellant has assigned eight reasons for a new trial; but, in the view I have taken of the case, it will not be necessary to consider the second, third, fifth, seventh, and eighth reasons, further than to observe, that we do not consider them sufficient in law for this court to set aside the verdict and judgment of the Circuit Court, and award a new trial. The first, fourth, and sixth reasons assigned for a new trial merit a more particular notice. And, in order to understand them, it may be proper to observe, that, on the trial of this cause, which was an action of trover to recover the value of certain bonds which the defendant had given to the intestate for part of the consideration money of a tract of land, for which the intestate had agreed to give him " a good deed or lawful conveyance," the plaintiff, in his testimony in chief, was permitted to prove the declarations of the intestate, made to *Philip Romig* and *Abraham Romig,* the elder, in the absence of the defendant. The evidence of the first of these witnesses was, in substance, that the deceased, some years before his decease, whilst residing in the defendant's house, left with the witness, for safe-keeping, some bonds, which were wrapped up in paper. He told the witness to take care of them, for he could not always carry them in his pocket. That the bundle of bonds remained in his possession about two years, when the intestate called on him for the bonds,

(Romig, Administrator of Romig, *v.* Romig.)

saying, he wanted to see something in one of them. The witness delivered them to him. Witness never examined the bundle, nor did he know what it contained, except from what the deceased told him.

The testimony of the latter witness was, that the deceased complained to him that he had been sued, and that the defendant had refused to become his bail. That he asked the deceased if he had not bonds against *Peter:* the deceased said he had fifteen bonds, for two hundred dollars each, in his pocket. The witness advised him to transfer some of them to the creditor who had sued him, in satisfaction of the debt. That the deceased went away, and shortly afterwards returned, and said he had done so, and was now clear. This evidence was objected to, and its admission forms one of the grounds of the evidence of a new trial.

I do not see any thing in this evidence, or in this case, to take it out of the general rule, that the declarations of one party, made in the absence of the other, are not evidence in favour of the party making them, although they are evidence against him, if his adversary chooses to use them as such. And that the general rule is so, I refer to 5 *Serg. & Rawle,* 190, 295, and 1 *Peters's Rep.* 15. There is nothing in the argument, that the defendant was to be considered as claiming under the deceased, as it was alleged that the intestate had given up the bonds to him. Even as repelling testimony, after the defendant should have given evidence of a giving up of the bonds to him, it would not be admissible. The defendant could give in evidence the intestate's acts and declarations against him, and the plaintiff could not affect them by any thing the intestate might have said or done at another time in the defendant's absence. A man cannot make evidence for himself. The case of *Scull* v. *Wallace's Executors,* 15 *Serg. & Rawle,* 231, is, in my opinion, decisive of this case; and so is 7 *Johns.* 95.

On the trial the defendant offered to prove that he had paid the expenses attendant on the funeral of the deceased. The evidence was objected to, and rejected. He then gave some evidence of his having worked for several years for his father, the plaintiff's intestate, and that he had promised he should be paid for it. For these services, for sixteen years, the defendant alleged there was due him twelve hundred dollars. He also proved, that the lands, for which the bonds were given, were unpatented; and that since the suit brought, he had paid four hundred and forty-three dollars and seventy-six cents to obtain a patent for them. The judge who tried the cause was of opinion, that the evidence produced did not substantiate the defendant's claim to compensation for services; nor did he think the defendant had proved that the intestate was bound to patent the lands; but, that, had he made out such proof, he could not avail himself of it in this action, which was trover, founded on a tort, and that the true measure of damages was the amount which

(Romig, Administrator of Romig, *v.* Romig.)

the bonds called for, adding interest on such as were due, and making a discount to ascertain the present worth of such as were not due.

It is true this is an action founded in tort, and that set-off is only allowable in actions arising *ex contractu*, and were these things matter of set-off they could not be received. 4 *Burr. Rep.* 2480, 2481. The claim for services, and for patenting the land, if established, went to destroy the consideration of the bonds; to show that they were given for more than was due; and was, therefore, evidence to defeat that consideration, and thus fix what was the true value of the bonds. The amount recoverable upon the bonds was the true measure of damages. Suppose a receipt indorsed on one of them for one hundred and fifty dollars, the balance remaining due would form the measure of damages in relation to it. It mattered not that the money for patenting the land had been paid since suit brought. It was not the payment of the money which showed the defect of consideration; the mere payment of money since the suit brought might not, strictly, have been evidence: it was the fact, that so much money was required to remove the incumbrance, and it matters not when he paid it. It was a satisfactory defence, when the action was commenced, and when discharged, was a payment in equity of so much money.

The agreement required the plaintiff's intestate to give *Peter Romig*, the defendant, a *good deed* or *lawful* conveyance for the lands. In *Dearth* v. *Williamson, Administrator of Welsh*, 2 *Serg. & Rawle*, 498, this court said, that by a lawful deed of conveyance in an agreement, might be fairly understood, a deed conveying a lawful or good title. The intestate was then to convey a lawful title, for which he was to receive the full value of the lands. He did not do so, for at the time of his deed to his son, *Peter*, the land was not patented; the legal title for it remained in the commonwealth,—the purchase money due to them, charged as a debt on the land; and was so, whether taken up by location, warrant, or settlement. So this court laid down the law in 9 *Serg. & Rawle*, 71, and 13 *Serg. & Rawle*, 307, and it is, moreover, evidently so, from all the acts made to enforce the payment of unpaid purchase money, in which the land is looked to as the debtor. *Peter Romig* then paid the incumbrance which lay on the land, for which *Jacob Romig* had agreed to make a lawful and good title, and the payment thereof to the commonwealth, in whom the legal title was, formed a good defence to the bonds.

I consider the payment of the funeral expenses a direct payment, and as much a matter of defence *pro tanto*, as a sum indorsed upon one of the bonds would be.

For these causes, a new trial should be granted.

New trial granted.