Mr. Chief Justice Johnson delivered the opinion of the Court. The first objection to the judgment, as presented by the record, relates to the reading of writ and return as evidence of the possession of the property in controversy. It is not material to decide whether the circuit court ruled correctly or not in this particular, as the same fact was abundantly established afterwards by the sheriff of the county, who was unquestionably a competent witness for that purpose. The testimony of Stone was clearly incompetent, and consequently should have been excluded. The declarations of Prater could not be received to the prejudice of the rights of the legal representatives of his intestate, and if he was cognizant of the facts testified by Stone, he was a competent witness himself, and should have been examined touching the same. The constitutionality of the act upon which this suit was founded, was incidentally discussed by this court in the case of Fleeman et al. vs. Horen et al., (3 Eng. 355.) It was there declared to be within the pale of the constitution, and we have not been able to perceive any good reason why we should not adhere to the opinion there expressed. We will now proceed to the consideration of the several instructions given and refused by the court;' as they present most of the questions material to a proper disposition of this case. The first asked by the defendant in the court below was refused. The first section of our replevin statute, and upon which this suit was based, provides that “whenever any goods or chattels are wrongfully taken or wrongfully detained, an action of re-plevin may be brought by the person having the right of possession, and for the recovery of the damages sustained by reason of the unjust caption or detention.” It is clear, from this, that a mere naked right of possession alone, coupled with proof of actual possession by the defendant, without the title to the property, are all-sufficient to enable the party thus entitled to recover in this action. In the case of Crocker vs. Mann, (Missouri R., republication, vol. 1, 2 and 3, page 383,) the supreme court of Missouri said that “ By the act to regulate replevin, (R. C. 659,) which provides “ that in all cases where any goods or chattels shall be taken from the possession of any person lawfully possessed thereof, without his or her consent, it shall be lawful for such person to bring an action of replevin therefor against any person in whose hands the same may be found.” “This statute,” that court said, “ was intended to put the action of replevin on a useful footing. All, that is necessary to be done to comply with this statute, is to show the plaintiffs possessed the property actually, or had the right to the immediate possession, and that the same was found in the hands of another: that other must account for such possession.” The same doctrine was recognized by this court in the case of Beebe vs. De Baun, (3 Eng. 564.) This action, under our statute, is designed to restore the possession to its rightful owner, and as such it is notabsolutely essential that the plaintiff should show a clear legal title to the property. Under this construction of the act, the first instruction is too comprehensive, and consequently was properly refused. The second was also properly refused. The very reverse of this instruction would seem to be the law. Where a party comes lawfully and peaceably into the possession of property, which he treats and believes to be his own, instead of entitling himself to a demand before suit, he most clearly forfeits such right. This court, in the case of Beebe vs. De Baun, already referred to, said: “The law dispenses with the necessity of a demand, where the defendant has committed acts inconsistent with the title, of the plaintiff, and conducted himself in such a way as to render a demand wholly unavailing. It is perfectly evident, from the testimony, that i)e Baun had done such acts as would amount to a conversion, and would have superseded the necessity of a demand in a suit brought by the sureties for the same property. The question here is, whether his conduct, at and subsequent to the purchase of Beebe, amounted to a conversion as against him; because, if so, he was under no legal obligation to demand the property. He engaged that, in case the trustees would postpone the sale from February to April, he would produce the negroes.. The sale was postponed to the time indicated, but he failed to comply with his promise. It is evident from all the testimony touching that matter that, had Beebe made a formal demand of the negroes before the institution of the suit, it could not have availed any thing; and indeed, he was not bound to make a demand, as De Baun was still acting in regard to the property in a way that was wholly inconsistent with his title.”' If the defendant in this case has exercised acts of ownership over the property'by selling or attempting to sell it, his conduct was clearly inconsistent with the ’title of the plaintiff, and consequently superseded the necessity of a demand. The proof is abundant upon this point, and we think there can be no doubt but that, by his repeated acts of ownership and conversion of the property, he placed himself entirely without the pale of such right. The court below, therefore, ruled correctly in refusing this instruction. The third was properly refused for the same reason. The fourth was not warranted under the state of case as presented by the record. The declarations of the defendant’s intestate, tending to negative the title of the plaintiffs, and not made in their presence, were not admissible. Thus, in trover for bonds of the intestate, the defendant (the intestate’s son) insisted the intestate gave them to him. The intestate’s declarations, tend-ding to negative this, made in the defendant’s absence, were held inadmissible. (See Rorning vs. Rorning, 2 Rawle 241. Scull et al., ad. of Irwin vs. Wallace’s exs., on error, 15 Serg. & Rawle 331, 233.) The declarations of the defendant’s intestate, going to negative the title of the plaintiffs, are not shown to have been, made in the presence of either, and consequently, under the authorities referred to, they were not competent evidence in favor of the defendant. But, whilst we concede that the defendant cannot in this case avail himself of the subsequent declarations of his intestate, made in the absence of the plaintiffs, or either of them, we by no means admit that he is therefore estopped from denying the title of the plaintiffs. The supreme court of New York, in the case of The Welland Canal Co. vs. Hathaway, (8 Wend. R. 483,) when speaking upon the subject of estoppel, said : “ An estoppel is so called because a man is concluded from saying any thing, even the truth, against his own act or admission. The acts set -up in this case, it is not pretended, constitute a technical estoppel, which can only be by deed or matter of record, but it is said they should operate by way of estoppel — an estoppel in pais. Such estoppels cannot be pleaded, but are given in evidence to the court and jury, and may operate as effectually as a technical estoppel under the directions of the court. (Co. Lit. 352. Vin. Abr., title Estoppel, 422. 19 John. R. 490. 1 Gibb. Ev. 87.) From the manner in which a party must avail himself of them, it is obvious that there can be no fixed and settled rules of universal application to regulate them as in technical estoppels. There are many acts which have been adjudged to be estoppels in pais, such as livery, entry, acceptance of rent, &c., but in many, and probably most instances, whether the act or admission shall operate by way of estoppel or not, must depend upon the circumstances of the case. As a general rule, a party will be concluded,from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter. The case of The First Presbyterian Congregation of Salem vs. Williams, strikingly illustrates this proposition. There the plaintiffs, by their attorney, called upon the defendant for his rent, and inquired if there was any property upon the premises, out of which it could be collected by distress: he answered, there was not, and pointed out all the property he had, which was but a trifle. On the trial of the ejectment brought for the default in payment of the rent, the defendant offered to show there was sufficient property on the premises, out of which the rent could have been collected. The court decided that he was estopped from disputing the truth of his admissions to the plaintiff’s attorney. All the cases I have seen, in which the acts or admissions of the party are adjudged to operate against him in the nature of estoppel, are generally cases where, in good conscience and honest dealing, he ought not to be permitted to gainsay them.” The case of Wallis vs. Truesdale (6 Pick. 457) is also directly in point. The court there said: “As to the question of property, the jury were instructed that the declarations made by the plaintiff were strong evidence against him, but were not conclusive: this was certainly proper, unless, as the defendants contend, they operated by way of estoppel, which cannot be maintained. If these declarations had been acted on by the other party, and thereby the plaintiff had acquired some advantages, or the defendants had sustained damages, it would have been otherwise.” (See, also, Tufts vs. Hays, 5 New Hamp. 453.) Let us now apply the rule, laid down in the cases referred to above, to the one at bar. It will not be contended but that, in case third persons had been influenced to act upon the admissions of the defendant’s intestate, as, if they hadbeen induced to purchase the property of Mrs. Frazier before her marriage, or of her andherhusbandjointly since that event, they would have been protected in such purchase. In that case, unless he were estop-ped by his admission, he would have it in his power to entrap the innocent and unsuspecting, and thereby to perpetrate the grossest injustice. This the law will not tolerate. But how can this doctrine apply to the plaintiffs below? Were they influenced by the declarations to act in any way that could possibly result in their injury ? It is most manifest that they were not. It is clear, therefore, that, as between the present parties, the doctrine of estoppel cannot be made to apply, and that the defendant below is fully at liberty to deny the right of the plaintiffs. The fourth instruction was, therefore, properly refused. The fifth was also properly refused. The proposition here laid down is too broad, and should have been so qualified as to have opened up the question of constructive delivery. We have looked into an immense mass of authorities upon this point, and after a full and careful review, have been constrained to adopt those which hold, that, where the evidence of the gift is clear and unequivocal, an actual delivery need not be shown, in case the jury shall be satisfied, from all the facts and circumstances, that a delivery has been made. It is admitted that the rule requiring proof of actual delivery is laid down as the law and that without any qualification, in the cases referred to, both in Virginia and Alabama. (See Ewing vs. Ewing, 2 Leigh 337. Brown vs. Handley, 8 ib. 119. Slaughter’s ad. vs. Tutt, (2 ib., and 2 Ala.) A different doctrine, however, has been held by the courts of New York, South Carolina, and some other States of the Union, and, amongst others, the supreme court of this State. One of the leading cases in New York is that of Grangiae, surv., &c. vs. Arden, (10 John R. 293.) The facts of that case were, that a father had bought a lottery ticket, which he declared he had given to his daughter E., and wrote her name upon it, and after the ticket had drawn a prize, he declared that he had given the ticket to his child E., and that the prize money was hers; this was held sufficient for a jury to infer all the formality requisite to a valid gift, and that the title in the moneywygfs,' cqmjf1 e t e~ a n d vested in E. The same qualification^!: the rule was laid down by the constitutional court of South Carolina, in the case of Davis vs. Davis, (1 Nott & McCord 225.) The court in that case said: “Parol gifts to a child are common, and it has not been usual to evidence such gifts by any solemn act of delivery. The formal ceremony of a delivery is not essentially necessary. It is sufficient if it appear that the donor intended actual gift at the time, and evidenced such intention by some-pet which may fairly be construed into a delivery;' as in the case cited from Strange, where the donee was put into possession by being entrusted with a key, <fcc. In the principal case, there was evidence given which was proper for the jury to consider as evidence of an actual delivery. The donor acknowledged he had given the negroes to his daughter, when questioned on the subject, and at a time when she had one of them in her arms. This was, in itself, evidence of a delivery or surrrender of his right to his daughter, and, accompanied with other circumstances, might be deemed a a sufficient proof of a prior delivery of all the negroes in dispute. The doctrine of these latter cases was recognized and acted upon by this court in the case of Dodd vs. McCraw, (3 Eng. R. 101); and being fully satisfied with that decision, the point is ho longer open to controversy. Upon the question of the sufficiency of the proof to establish either an actual or constructive delivery, we, of course, can express no opinion, as it is not presented by the record. The sixth is a mere abstraction, as there is no evidence upon which to predicate it. The seventh was properly disallowed for the same reason. The eighth was clearly legitimate, and ought to have' been given to the jury. With regard to oral admissions in general, and as to the third class of admissions in particular, viz: unconnected and casual representations, they have occasionally met with great disfavor as a dangerous kind of evidence, receivable with great caution, (Myers vs. Baker, Hardin 549,) with suspicion; and the jury were admonished to see that it was the intention of the party to admit a fact from being satisfied of its truth.” See Phil. on Ev., Cow. & Hill’s Notes 211, and the cases there cited. The ninth was strictly the law, and consequently should have been given in charge to the jury. The case of Wallis vs. Tuesdell et al. is directly in point. The jury were^ instructed, in that case, that the declarations were strong evidence against the plaintiff, but not conclusive, and that if, from the whole evidence, they should be satisfied that the property belonged to him, and that his declarations were made for the purpose of preventing his creditors from attaching it, they might find a verdict in his favor. These were instructions of the lower and sustained by the supreme court. The tenth should likewise have been given. The court of appeals of Kentucky, in the case of Craig vs. Baker, (Hardin’s R. 289,) said: “ Men are bound to state facts truly, when they speak of them, and are bound, in many instances, to disclose them, or be barred of a right growing out of them; but no man is bound by an admission of law, or a mistake of the law in his judgment upon his own right; much less by a mistake of the legality of his adversary’s claim. If the principle was once admitted that a better estate could be defeated, released or extinguished by a mistake of opinion, or confession of law, or the expressions of intention by the holder not to prosecute the right, made by parol, in the common pursuits of life, we might shortly expect a description of bills in chancery, before unknown, and which might be styled emphatically, bills to perpetuate “ the mistakes of the right” and the perjury of witnesses. The case of Polk's lessee vs. Robertson & Cockrel, 1 Tenn. (Overton's) R. 463, is to the same'effect. See, also, Leforce vs. Robertson, (Litt. Sel. Cas. 223,) and Moore vs. Hichcock, (4 Wend. 222, 298. The eleventh is substantially the same with the tenth, and consequently ought to have been given. The twelfth was substantially the same with the eighth, and consequently ought to have been given. ' • The thirteenth was an appropriate instruction, and should have been given. A mere naked declaration, that property belongs to another, even though it should be made by the true owner, cannot be said of itself to confer a title. It is nothing more than evidence of title, and stands as a mere nucleus around which other evidence may be made to cluster, and from which, when all taken together, a perfect title may or may not be presumed, acccording to circumstances. The fourteenth was properly refused. The property in dispute being transferable by parol, of course a parol conveyance, if complete and otherwise unobjectionable, would override a documentary title. The fifteenth is substantially the same with the eleventh, and consequently should have been given. The sixteenth is without a foundation in the evidence. The administrator did not testify in the case, and it has already been ruled that what he had said as deposed by another was incompetent. The seventeenth was properly excluded. The administrator stands in the shoes and stead of the intestate, and he can only make such a defence as could have been made by the party whom he represents, unless new matter of defence shall have arisen since the death. He cannot set up the fraud of his intestate to defeat_an action originally commenced against him. The 18th was properly refused. There was no evidence of a gift of the property in controversy to the wife of Gatlin during the marriage or at any other time; consequently the instruction was purely abstract, as applied to this case. 'i’he nineteenth is defective, and ought to have been refused for the reason already assigned in respect to the 5th. The twentieth is defective in requiring the instrument to be recorded in the county where the slaves are. The 1th section of art. 2, of chap. 153, declares that “No gift of any slave shall pass or vest any right, estate or title in or to any such slave in any person whatsoever, unless the same be made, First. By will duly proved and recorded; or Second. By deed in writing, to be proved by not less than two witnesses, or acknowledged by the donor and recorded in the county in which one of the parties lives, within six months after the date of such deed.” The 8th section of the same act further declares that “ This act shall only extend to gifts of slaves, whereof the donors have, notwithstanding such gifts, remained in possession thereof, and not of gifts of such slaves as have come to the possession of, and remain with the donee, or some other person claiming under such donee.” It was not material, therefore, that the instrument evidencing the gift should have been recorded in,the county where the negroes may have been, and, as a matter of course, the court should not have so instructed. Having disposed of all the instructions asked for by the defendant below, we will now proceed to examine those given by the court of its own motion. The first was improperly given, as it was subject to the same objection as the one first asked by the defendant. The second was most clearly right. It is manifest that, in case the title was once in Gatlin, and he never had parted with it, either by a lease or gift, his administrator was entitled to recover the property in controversy. The third is a mere abstract proposition, as there was no evidence upon which it could be based. The fourth was wholly unauthorized for the same reason. The fifth is not strictly in accordance with the law, and is well calculated to mislead the jury. It does not follow, under all circumstances, that a gift from a father to a child is good without actual delivery. It is upon the supposition that the child, who is the donee, is itself in the family and under the immediate control of the father, that the law will dispense with actual delivery. The sixth was properly given. If the property was in the plaintiff below, and the defendant had converted it by a sale, it is clear that no demand was necessary before suit. Upon a full view'of the whole case, it is apparent that there are numerous errors, and for which the cause ought to be reversed. It is, therefore, considered and adjudged that the judgment of the Hempstead circuit court herein rendered, for the errors aforesaid, be reversed, and the cause remanded, with instructions to be proceeded in according to law and not inconsistent with this opinion. Mr. Justice Scott dissented from the opinion of the court as to the 4th instruction asked by deft. He said it was good law. — Rep.