## Breckinridge *vs* Coleman.

ERROR TO THE FAYETTE CIRCUIT.

*Writs of error coram vobis. Notice. Justices of the Peace. Limitation. Femes covert. Jurisdiction.*

JUDGE BRECK delivered the opinion of the Court.

IN 1843, Breckinridge recovered a judgment upon an account, before a Justice of the Peace, for $48 and costs, against Eliza B. Coleman, then the wife of James Coleman. An execution having issued thereon, the debt was replevied, with Samuel Coleman as security. A bill in chancery was subsequently filed by Mrs. Coleman and her husband and the surety in the replevin bond, and an injunction obtained restraining the collection of the judgment. It was alledged in the bill, that the account upon

ERROR CO-
RAM VOBIS.

Case 91.

July 1.

Case stated.

which the judgment was rendered, was fabricated and unjust, and that the complainant, Eliza, was at the rendition thereof, a *feme covert.*

On final hearing, the bill was dismissed and the injunction dissolved.

A further execution having issued upon the replevin bond, Mrs. Coleman sued out a writ of error *coram vobis,* averring the death of her husband subsequent to the emanation of the last execution, that she was a *feme covert* when the judgment was rendered and the debt replevied, and praying that the judgment might be set aside and the bond and execution quashed. The writ was issued and made returnable before the magistrate who rendered the judgment. The magistrate having refused to grant the relief sought, an appeal was taken to the Circuit Court, and the matters of law and fact being submitted to the Judge, the judgment was vacated and the replevin bond and execution quashed, and Breckinridge has brought the case to this Court.

In regard to the material facts in the case, there is no controversy. The *coverture* was admitted—the subsequent death of the husband, and that Mrs. Coleman had a separate estate.

<span class="margin">Facts in the case:</span>

Various objections, however, are raised, involving the legality and regularity of the proceedings upon the writ of error *coram vobis.*

And 1. It is objected that the writ should have been dismissed for the failure to give Breckinridge ten days' notice of the time and place of making application for it, as required by the act of 1803, (2 *Stat. Law,* 1555.)

<span class="margin">The statute of 1803, (2 St. Law, 1555,) requiring notice of application for writs of error coram vobis, does not apply to a case where the object of the writ is to contest the validity of the judgment, nor is it necessary in such case to produce a copy of the bond and execution.</span>

That act refers exclusively to proceedings for relief by writ of error *coram vobis,* against "faulty replevin and forthcoming bonds, or any faulty or erroneous execution," and was not intended, and does not embrace a case of the character now before us. In this case neither the bond nor the execution were, *per se, faulty* or defective. So far as appears, they were both regular. The allegation was, that there was no valid judgment to sustain them. For the same reason the objection that a copy of the bond and execution was not produced, as required by the act referred to, is not deemed available.

2. It is objected that one Justice of the Peace was not authorized to issue such a writ.

The act of 1820, (2 *Stat. Law*, 814,) authorizes two Justices of the Peace, who have been designated by the County Court for that purpose, to grant, under particular circumstances, certain writs, and among them writs of error *coram vobis*. The authority thus conferred, however, does not take away or impair any power which Justices of the Peace may have previously possessed, to grant writs of error *coram vobis*, to correct errors in proceedings in their own Courts. The authority of a Justice of the Peace for that purpose, wherever it would be the appropriate remedy to issue such a writ, independent of any statutory provision, we apprehend is unquestionable. The writ is authorized by the common law and demandable as matter of right, and is applicable as a remedy to a magistrate's Court, as well as to the Circuit Court: *Case* vs *Ribelin*, (1 *J. J. Marshall*, 29, *and authorities there cited*.) It was in this case the appropriate remedy, and probably the only appropriate remedy.

3. It is urged that the limitation prescribed in the 4th and 5th sections of the act of 1802, (2 *Stat. Law*, 1554,) applies to this case. Those sections have reference, as decided by this Court in *Handley* vs *Fitzhugh*, (3 *Marshall*, 563,) to writs of error prosecuted for some error in a forthcoming or replevin bond, or in the Sheriff or other officer in taking the same. In that case an execution had been sued out against the administrator upon a judgment against his intestate, without revivor. In this case the execution issued upon a judgment, which the extraneous facts of coverture rendered invalid. The case, we think, is not embraced by the act referred to.

4. It is contended that as Mrs. Coleman, when the bill in chancery was filed and the injunction obtained, executed a release of all errors in the judgment at law, she is precluded from relying upon any errors in the judgment upon this proceeding.

The release was signed by Mrs. Coleman alone. Had she any authority, or was she *competent* to execute it? We think not. Notwithstanding she had separate estate there can be no doubt it could not be reached by any pro-

*Marginal notes:*

BRECKINRIDGE
*vs*
COLEMAN.

Justices of the Peace in Kentucky, in virtue of their common jurisdiction, have power to award writs of error *coram vobis* whenever that is the appropriate remedy to correct errors in their own courts independently of the statute conferring the jurisdiction to grant such writs, on certain justices, to be designated by the County Courts. (1 *J. J. Marshall*, 29.).

The statute of 1802, limiting the time for presenting writs of error *coram vobis* to correct errors in replevin or forthcoming, bonds, does not apply to writs of error to correct an invalid judgment. (3 *Marsh.* 563.)

The execution of a release of errors on a judgment at law by a *feme covert* is invalied, though the husband be a party to the bill.

ceeding at law. Even a confession of judgment would not be binding and enforcible against her as such. She is protected in the enjoyment of her separate estate through the aid of the Chancellor, and hence the Chancellor alone has the power to subject her estate to the payment of just and conscientious demands against her.

The separate estate of *femes covert* cannot be reached by a proceeding at law. *Argu.*

The doctrine seems to be, as contended, that the wife by her note or bond, may create a lien upon her estate, which a Court of Equity will enfore, but it is said there is no case in which a personal decree has been made against a *feme covert*. (1 *Maddock's Ch.* 474.) But we are aware of no authority in support of a proceeding at law against the wife alone to reach her separate estate for her contracts or liabilities. If Mis. Coleman, by releasing the errors in this judgment, could render it valid and enforcible against her, we perceive no reason why she could not confess a judgment at law, and in that way place it out of her power to revoke or avoid it, which, in our opinion, would not be the case. The fact that the judgment was only prejudicial to her because it would subject her separate estate, and that her husband was a complainant in the bill, will not vary the case. For, whether the release may be presumed to have been executed by her with or without his assent and approbation, is not important. The release, we think, could not affect her right to set aside the judgment.

That a party failed to obtain relief before the Chancellor, who had no jurisdiction of the subject, presents no bar to relief on a writ of error *coram vobis*, the latter being the proper remedy.

5. It is contended that the Circuit Court, in the chancery suit, could properly have granted relief, upon the ground of *coverture*, by perpetuating the injunction against the judgment at law. This objection is also, in our opinion, untenable. As already stated, the appropriate, and only appropriate remedy for the error in rendering judgment against Mrs. Coleman, while a *feme covert*, was by writ of error *coram vobis*. The Circuit Court had no jurisdiction upon that ground, to correct the error and set aside the judgment, and consequently the proceeding in chancery, had it been formally relied on, would have constituted no bar to the writ of error *coram vobis*.

6. It is urged that upon the hearing of the writ of error, the justice rendered an additional judgment against Mrs. Coleman, or re-rendered the first judgment, and as she

was then discovert, it was valid. The record of the proceeding before the justice, is indefinite and obscure, as to what the judgment was upon the writ of error. The only sensible construction we can give to it is, that he refused to vacate the first judgment. The only disposition which he seems to have made of the writ of error, is to render judgment against Mrs. Coleman for the same amount of the first judgment, with additional costs, we suppose the defendant's costs upon the writ of error. We think this amounts to a mere reiteration of his opinion, upon the trial of the warrant, consequent upon his refusal to give the relief sought by the writ of error. We cannot regard it as contended by counsel, as equivalent to a revocation of the former judgment, and a quashal of the replevin bond and execution, and a retrial of the cause upon the warrant against Mrs. Coleman as a *feme sole,* and the rendition of a new judgment against her as such.

But if possible to come to this conclusion, it would follow that taking the whole action of the justice, his disposition of the case was manifestly erroneous. The only issue upon the writ of error, was whether Mrs. Coleman at the rendition of the first judgment, was or not a *feme covert.* And upon that issue, to go on and try the warrant over again against her as a *feme sole,* would be unauthorized and absurd. The whole proceeding against her upon the warrant was erroneous.

The last objection relied upon is, that the appeal from the justice was to the March term of the Circuit Court, and not having been tried at that term, under the 5th section of the act of 1802, supra, it stood *ipso facto* dismissed. The section referred to, as before shown, does not apply to this case ; but even if it did, it clearly has no reference to the trial upon the appeal. It applies to the trial of the case in the Court to which the writ was made returnable, and not to any other tribunal to which it may be transferred by appeal or otherwise.

Upon the whole, although the proceedings have been somewhat irregular, yet we perceive no available error for the reversal of the judgment. And, it is therefore affirmed.

*Pindell* for plaintiff; *Robertson and McKee* for def't.

<div style="margin-notes">

BRECKINRIDGE
*vs*
COLEMAN.

Upon the trial of a writ of error *coram vobis* before a justice, upon the question of the validity of the judgment, the justice should only try and decide the matter in controversy, and not forthwith proceed to re-try the case as an original case.

The statute requiring writs of error *coram vobis* to be tried at the first term, does not apply to such trials before justices of the peace, nor to trials of an appeal from the decision of justices upon such writs.