CASE 33—PETITION—FEBRUARY 5.

# Kendall v. Crouch.

APPEAL FROM HARRISON CHANCERY COURT.

1 USURY—LIMITATION.—Where usury is paid upon a judgment no right to recover it back accrues to the debtor as long as the judgment is in force; therefore, the statute of limitation does not begin to run as against a proceeding to enforce restitution of usury paid upon a judgment until the judgment is annulled.

2. SAME—Where, in the renewal of a note, there is a change of payee or of a part of the obligors, those bound upon the old obligation will be discharged, because there is a new contract; but such a novation is not a payment of usury, and if usury be carried into the new note it will, upon plea, be extracted, any payments theretofore made being treated, at the election of the debtor, as paid upon principal and legal interest, although paid as usury.

A. H. WARD FOR APPELLANT.

1. Parties sureties on a renewal note can not plead usury paid on the original note to which they were not parties. (1 B. M., 321-2.)

2. The acceptance of a new note, with new parties, in lieu of an old note, is a novation, and the statute of limitations against the recovery of usury paid on the old note, begins to run at the date of the execution of the new note. (Smith v. Young, 11 Bush, 393.)

3. From the date of payment of a replevin bond, without an appeal pending, the statute begins to run against the recovery of usury thus paid on the antecedent debt.

Kendall v. Crouch.

T. T. FORMAN FOR APPELLEE.

1. In a common law action when the law and facts are submitted to the court without a jury, the judgment will not be disturbed unless flagrantly against the evidence. (Helm v. Coffee, 80 Ky., 176; Union Ins. Co. v. Groome, 4 Bush, 289.)

2. The payment of a replevin bond to save cost is not a voluntary payment from the date of which the statute of limitations begins to run.

3. For the recovery of money coercively paid, as in this case, the appropriate remedy to recover it back, is by rule. (Obertlen v. Palmater; 7 J. J. N., 241; Gregory v. Likes, 9 B. M., 44; Kane v. Pitcher, 7 B. M., 651.)

4. The statute of limitations against the recovery of usury, did not begin to run until the reversal in the Court of Appeals of the judgment holding that there could be no recovery.

5. There is no novation when a new obligation is executed for an old debt, without a change of creditor, debtor, or consideration. (Parsons on Contracts, chap. 13, p. 217; Pothier on Obligations, 581; Bouvier's Law Dictionery; Lowery v. Fisher, 2 Bush, 74; Pryor v. Smith, 4 Bush, 383; 4 Barre & C., 163; 1 Mees. & W. Exch., 124; 4 Ill., 34; 4 La. An., 284; 15 N. H., 129; 19 Johns., 129.)

6. As long as usury can be traced, the new obligation given in discharge of an old indebtedness is without consideration. (79 Ky., 272; 80 Ky., 434.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

This action is upon a promissory note. The defense of usury was interposed. The answer gives the appellee Crouch's version of the history of the debt, stating, according to his side of the case, the various renewals, payments and changes of obligors.

The lower court, acting doubtless upon the idea that by the change of obligors at different times when the note had been renewed, as stated in the answer, there had been such a novation as to cut off the defense of usury, sustained a demurrer to it, and rendered a judgment for the appellant. It was replevied soon after, and then paid. An appeal was taken to the Superior Court by the appellee about

twenty-two months after the rendition of the judg-ment, and about eighteen months after its payment,. and upon hearing it was reversed. Upon the return of the cause, the appellee sought, both by rule and pleading, to get his money back, that he had paid in discharge of the subsequently reversed judgment. The appellant resisted upon three grounds, and issues were made as to them by proper pleadings. He denied, first, that the claim was usurious, and his version of its history is entirely different from 'that of the ap-pellee.

The latter claims that one S. D. Godman, with his father, Allen B. Godman, as his surety, obtained a loan from the appellant in 1857; that the note was renewed by them several times, various payments being made; that after the death of the father in 1868, S. D. Godman, in 1869, renewed the note with Jerry and W. B. Godman and the appellee as his sureties; that in 1873, W. B. Godman and the appellee became the only sureties upon it, and that owing to payments, the entire amount of the note then executed was usury, and that finally the note sued upon, dated March 5, 1878, and due twelve months thereafter, was given by way of renewal by W. B. Godman and the appellee, the original principal obligor, S. D. Godman, not uniting in it.

Upon the other hand the appellant claims that the debt of 1857 was settled in 1869, and that the note given in the latter year arose out of an entirely differ-ent transaction, and was based upon an altogether different consideration.

The distinguished counsel for the appellant attempts

to demonstrate by calculation, that his client is right, but the trouble is that it was impossible to show, after a lapse of twenty years or over, exactly what payments had been made upon the debt, or at least when they were made. Hence, any calculation can not be otherwise than uncertain as to the truth of the matter. Both the lower court and its commissioner found that his client was mistaken. There was at least a conflict of testimony. In fact we think the weight of it supports the appellee's version of the transaction ; but in any event, it was a common law issue of fact, and the conclusion reached below as to it, and that the entire amount of the note sued upon was usury, will not be disturbed.

The next ground relied upon by the appellant was that the change of obligors, and the extension of time of payment for twelve months, was such a novation as to be equivalent to payment, and that therefore the plea of usury was unavailing, as limitation bars its recovery after the lapse of a year from its payment.

There was no new party introduced, however, by the execution of the last note. There was no new obligor or new obligee or new consideration ; moreover, the claim upon which it was founded was not valid in law or equity. The principal obligor in the previous note was merely dropped ; and it may now be regarded as settled law in this State that such a novation will not deprive the debtor of the plea of usury, if it has, in fact, been embraced, in the new note. Any payments theretofore made will be treated as having been paid upon the principal and legal interest without regard to how they were, in fact, made or received. They will be

so treated at the election of the debtor, although they were paid as usury; and so far as the usury has been carried into the new note it is without consideration, and can not be recovered. A change of payee or of a part of the obligors will discharge those bound upon the old obligation, because it is a new contract; but it is not a payment of usury; and if it be carried into the new obligation as a part of the sum to be paid upon it, it is to that extent tainted, and the usury will, upon plea, be extracted. Fitzpatrick, &c., v. Apperson's Ex'r, 79 Ky., 272.

Finally, the appellant urges that as the appellee paid the judgment and did not appeal for about eighteen months thereafter, the statute of limitation forbidding the recovery of usury, unless it be sued for within a year after the payment, applies, and prevents a recovery. General Statutes, chapter 71, article 3, section 4.

The Civil Code, section 745, gives a party the right to appeal from a judgment at any time within two years from its rendition; and the question now for the first time presented to this court is, whether, under these circumstances, the period of limitation as to the recovery of usury began to run from the time of the payment of the judgment. The unsuccessful party to the litigation had a right, as the successful party knew, to appeal at any time within two years. The rights of no third party were involved. It was a matter between the parties to the litigation only.

Even where real estate is aliened after a judgment by the successful party, and the interest of a third party thereby becomes involved, the right to appeal

operates for a reasonable time as notice to the latter, and for that length of time he will be affected as by a *lis pendens*, although there has been a final judgment in the lower court. This rule is based upon expediency and natural right, and is necessary to prevent a failure of justice. The true reason for the rule of *lis pendens* is not that it amounts to a notice of a litigation, but that the alienation of the property in litigation shall not prevail to the prejudice of the opposing party. If this were not so, no litigation could ever be brought to a successful end.

Mr. Pomeroy, in his valuable work on Equity Jurisprudence, section 634, says: "Even a judgment in favor of the defendant does not necessarily at once terminate the *lis pendens*. If the unsuccessful party is entitled to appeal, the constructive notice continues during a reasonable time for an appeal to be taken." Even in such a case, where the rights of third parties may be affected, if an appeal be taken within a reasonable time, the *lis pendens* is prolonged until the final decision, although there has already been rendered a judgment of a final character. (Debell v. Foxworthy, 9 B. M., 228; Clark's Heirs v. Farrow, &c., 10 B. M., 446; Ludlow's Heirs v. Kidd, 3 Ohio, 541.) In such a case the litigation is regarded as still continuing, at least for a reasonable time, notwithstanding there has been a final decree by a court of original jurisdiction.

In the case now before us, however, only the rights of the parties to the action are involved; and if the doctrine of *lis pendens* applies, the litigation should, from the necessity of the case and for the purpose of

·doing justice, be regarded as still continuing during the period given to the party within which. he may appeal.

The reasonable and obvious conclusion to our minds is, that the statute of limitation as to the recovery of usury could not commence to run while the judgment ·of the lower court allowing it was in force. This judgment said that there was no usury in the note sued upon ; and until it was annulled the debtor could certainly take no steps to recover the usury, which the judgment required him to pay. He could only rid himself of it by an appeal ; and he had an absolute statutory right to resort to it at any time within two years. A different view would practically deny to the party any benefit arising from his right of appeal, unless he were able to supersede the judgment.

It was the reversal of the judgment of the lower court which made the question of usury again an open one. Until then the matter was *res judicata*, and it therefore seems to us that the only statute of limitation which was running in the *interim* was that relating to the right to appeal. A judgment of a court of competent jurisdiction was in force, declaring there was no usury in the debt. It required the debtor to pay it. Certainly he could not in the face of it recover the money paid in satisfaction of it as usury.

If the rule applicable in case of the alienation of real estate involved in litigation, and where the rights of third parties become involved, covered his case, yet he would have a reasonable time within which to take an appeal ; and this would *pro tanto* suspend the running of the statute, because it dates from the time of payment.

We can conceive a case where the party might be
guilty of such laches in the prosecution of his appeal,
when taken, as to deprive him of right.  But no such
case is now presented.  The appellee at once took
steps upon the reversal of the judgment to recover
back the money paid under it; and it would result in
a defeat of justice, if where a court has erroneously
compelled a party to do a thing, and he, upon an
appeal and a due prosecution of it, has reversed the
judgment, it could not place him in *statu quo.*

The judgment is affirmed.