[No. 472.   August 24, 1892.]

## SCOTTISH MORTGAGE & LAND INVESTMENT COMPANY OF NEW MEXICO, LIMITED, PLAINTIFF IN ERROR, v. W. H. McBROOM, DEFENDANT IN ERROR.

CORPORATIONS, FOREIGN—USURY—LIABILITY FOR ACTS OF RESIDENT AGENT.—An agent of a foreign corporation, loaning money under a contract with the corporation, providing that, "all commissions on loans by the company, and all bonuses or penalties payable by borrowers from them in respect of such loans, shall belong to the company," will be presumed to be acting for the company in receiving commissions on loans in excess of the highest rate of interest allowed by law, where the company has knowledge of each step taken by him in such negotiation, although the agent has received exclusive benefit of the commission (Fowler v. Equitable Life Ins. Co., 12 Sup. Ct. Rep. 1); and the fact that such company was not aware that the transaction was usurious and unlawful, under the law of the territory, will not protect it.   Lloyd v. Scott, 4 Pet. 105.

ID.—USURY—FORFEITURE.—Where, in such case, an action was brought, under sections 1737, 1738, Compiled Laws, to recover double the amount of the commission or bonus alleged to have been charged and received in excess of the lawful rate of interest prescribed by the statute,—Held: That the better rule is to treat the usurious transaction as valid to the extent of the principal sum and legal interest, and apply all payments made thereon, whether such payments were received as usury, or as a bonus, or commission in reduction of the principal and legal interest; and that such action will not lie until the principal and interest of the loan have been paid.

ERROR, from a judgment for plaintiff, to the Fourth Judicial District Court, San Miguel County. Judgment reversed.

The facts are stated in the opinion of the court.

FISKE & JONES for plaintiff in error.

FRANK SPRINGER for defendant in error.

Under sections 1737, 1738, a right of action accrues against any person, etc., who may charge or collect a

higher rate of interest than twelve per cent per annum, by means of "discount, commission, or any subterfuge." Lloyd v. Williams, 3 Wils. 261, followed in Wade v. Wilson, 1 East, 195, and reaffirmed in Wood v. Grimwood, 10 Barn. & Cress.

If, under the statute, a contract made in violation of the usury law is void, it is conceded that the doctrine of locus penitentiae does not apply. Tiffany v. Boatman's Institution, 18 Wall. 384; Miller v. Ammon, 145 U. S. 421, and authorities cited.

FREEMAN, J.—This is a writ of error, brought to reverse a judgment rendered in favor of the defendant in error and against the plaintiff in error in the district court for the Fourth judicial district for the county of San Miguel. The facts are substantially as follows: On the twenty-third of June, 1883, the Scottish Mortgage & Land Investment Company of New Mexico, Limited, a corporation organized under the laws of Scotland, filed in the office of the probate clerk of San Miguel county, New Mexico, its certificate of incorporation and articles of association, and a certificate designating Las Vegas as its principal place of business in New Mexico, and George J. Dinkel as its authorized agent, pursuant to the laws of the territory allowing foreign corporations to do business here. By articles of association it appears that the principal object of this company was the investment of money on loan on the security of real, or heritable, or other property in the United States. The directors were empowered to appoint managers and other necessary officers. Previous to filing these papers the company entered into a contract with George J. Dinkel, appointing him and one Browning local managers of the company. Article 4 provided that "all commissions on loans by the company, and all bonuses or penalties payable by borrowers from them in respect of such loans, shall belong to

the company." The general manager of the company was to have general charge of the company's business in New Mexico. On the fifth of February, 1886, the defendant in error made application to the company, through Dinkel, its general manager, for a loan of $65,000, to be secured by mortgage, and this offer was transmitted to the home office for instruction. The application was at first refused, for the reason that the amount was too large. On July 14 of the same year Dinkel again wrote to Carson & Watson, the general managers at Glasgow, the home office, stating that McBroom had renewed his application for loan, first proposing to pay a commission of $6,000 for securing the loan, and afterward to give Dinkel a fourth interest in his entire ranch and stock, which interest Dinkel then estimated to be worth $50,000. In his letter transmitting this offer to the home company Dinkel said: "Now, such a proposition comes only once in a very great while, and I was anxious that the company should receive the benefit of this great commission, which would be in addition to the ten per cent interest he proposed to pay." A directors' meeting was held at the home office to consider this proposition, and it was also declined. On the same day, however, the president of the company wrote Dinkel, giving a full account of the meeting, saying: "In regard to the McBroom business, I very strongly urged on my colleagues that if we could get here the parties whom you have already interested to stand aside, we might give him the whole $65,000 at twelve per cent, and in that event perhaps McB. might still consider you entitled to a commission," etc. On September 4 Dinkel cabled to the home office that McBroom had backed out; but later on, negotiations having been renewed, Dinkel cabled the home office as follows: "Will directors now loan McBroom $65,000. First year, six per cent; after

that, ten per cent, with quarter interest." To this telegram the board replied by cable as follows: "Mc-Broom: The board sanction a loan of $30,000, first mortgage, ten per cent; or $65,000, twelve per cent. Decline quarter interest, but get best cash bonus possible instead, or get third party to buy quarter interest, and pay us." On the basis of this understanding the trade was consummated, the company advancing in checks, etc., to McBroom, the defendant in error, the sum of $65,000, and the defendant in error returning at the same time to Dinkel the bonus of $6,500.

This action was brought under the statute to recover double the amount of this bonus or commission. The action was brought under sections 1737 and 1738 of the Compiled Laws, which are as follows: "Sec. 1737. Any person, persons, or corporation, who shall hereafter charge, collect, or receive from any person a higher rate of interest than twelve per cent per annum, shall be guilty of a misdemeanor, and, upon conviction thereof before the district court or a justice of the peace, shall be fined in a sum of not less than twenty-five dollars, nor more than one hundred dollars; and such person, persons, or corporation, shall forfeit to the person of whom such interest was collected or received, or to his executors, administrators, or assigns, double the amount so collected or received upon any action brought for the recovery of the same within three years after such cause of action accrued. Sec. 1738. The provisions of this act shall also apply to any person, persons, corporation, or officer of the same, who may charge, receive, or collect a higher rate of interest than twelve per cent per annum by means of discount, commission, agency, or any other subterfuge."

The first contention of the plaintiff in error is that the transactions out of which the cause of action arises

were not tainted with usury in a way to affect the rights of the company; that, in order to constitute usury, there must be intention knowingly to contract for usurious interest, and that both parties must participate in this corrupt agreement; that there must be an aggregatio mentium. It insists that if there was usury in the transaction it was participated in alone by its agent, Dinkel. The record shows that the $6,500 claimed to be usurious were paid by defendant in error to Dinkel, the local manager of the company for New Mexico, for his services in procuring the loan. It is insisted, therefore, that the transaction falls within the rule laid down by the supreme court of the United States in the case of Call v. Palmer, 116 U. S. 98, wherein that court say: "It is settled that when an agent, who is authorized by his principal to lend money for lawful interest, exacts for his own benefit more than the lawful rate, without authority or knowledge of his principal, the loan is not thereby rendered usurious." In reply to this contention the defendant in error insists: First, that the doctrine of agency has no application to the facts in this case, that Dinkel was not an agent, but an officer of the corporation, that a corporation can act alone through its officers, and that a transaction with Dinkel was a transaction with the corporation itself; and, second, that the corporation knowingly participated in the usurious transaction by authorizing Dinkel, its local manager, to get "the best cash bonus possible," and that it can not protect itself from the consequences of its corrupt transaction by showing that it allowed its local manager to retain the fruit thereof. In the view that we have taken of the matter, it is immaterial to determine whether Dinkel was an agent, or whether, as an officer, he was a part of the corporation, so that a transaction with him was a transaction with the cor-

*Marginal note: FOREIGN corporations: usury: liability for acts of resident agent.*

poration itself; for the fourth article of the agreement between him and the home office, as already shown, provided that all such commissions and bonuses should inure to the benefit of the company. In view of this provision of his contract, and of the fact that the company had knowledge of each step taken by him, it is to be presumed that he was acting for the company. The facts in this case bring it clearly within the rule laid down by the supreme court of the United States in the case of Fowler v. Equitable Life Insurance Trust Company, 14 U. S. 384, 12 Sup. Ct. Rep. 1, wherein a foreign corporation (whose agent in the state accepted a commission from the borrower on loans procured from such foreign corporation) was held to have received the proceeds of the usurious transaction, the commission paid to the agent being in excess of the highest rate of interest allowed by law. Now, does it afford any protection to the company to show that it was ignorant of the law of this territory, and was not therefore aware that the transaction was usurious and unlawful? Lloyd v. Scott, 4 Pet. 105.

Conceding, therefore, the correctness of the position of the defendant in error that the transaction was with the plaintiff in error, we are next to inquire into the legal effect of the contract as it relates to rights and liabilities of the contracting parties. The contention of the plaintiff in error is that, while a party may be indicted under section 1737 as for a misdemeanor for charging an illegal rate of interest, in order to subject him to the penalty of a forfeiture he must have received it, the forfeiture being fixed at "double the amount so collected or received."

It insists also that "the amount so received" has reference only to the amount in excess of the legal rate; that is, the usury. It insists also that, as the $6,500 received by it or its agent were taken out of the loan made by it to defend-

USURY: forfeiture.

ant in error, it was not such a collecting or receiving as entitles defendant in error to maintain this action; that if A. and B. enter into a contract, by the terms of which it is agreed that A. shall lend to B. $1,000, in consideration of which B. shall pay to A. a bonus of $100, and execute to him his note for $1,000, bearing the legal rate of interest; and in pursuance of the contract A. lends to B. the $1,000, and B. hands back to A. $100, and his note for $1,000, that the practical effect to the transaction is that B. goes off with $900 of A.'s money, while A. retains B.'s note for $1,000; and that the legal effect of the transaction is that the usury is contained in the note, and that A. has not received usurious interest for the money actually advanced. To the contrary is the position of the defendant in error, who insists that the penalty or forfeiture accrued when the usurious interest was charged and the amount of the forfeiture was fixed by the retention of the $6,500 out of the sum advanced by the plaintiff in error. But few, if any, questions growing out of the law governing contracts have given rise to more discussion and resulted in less satisfactory adjudication than those involving the subject of usury. This contrariety of adjudication is the fruit of two opposing theories entertained as to the moral, as contradistinguished from the legal, character of usurious transactions; the theory of one class of jurists and legislators being that the exaction of usury is an iniquity, and that, therefore, all laws passed for the suppression thereof should receive a liberal construction; while, on the contrary, it is insisted that while it is the province of the legislature to fix the rate of interest that may be contracted for and to make usurious contracts void, such contracts are not within themselves in contravention of good morals, are not mala in se, and that, therefore, the penalties imposed should be confined to the strict letter of the statute.

Guided by the first of these opposing theories, many courts, both in this country and England, have held that not only is the exaction of usury unlawful, but that it avoids every contract into which it enters; while other courts of equal weight and respectability have holden to the doctrine that no greater penalty should be imposed than is strictly within the words of the statute. It has been variously held that a statute which prohibits under penalty the exaction of more than the prescribed rate of interest makes the contract for the excess void, makes the contract for the entire interest void, makes the entire contract itself void.

We shall proceed now to inquire as to the construction heretofore given to statutes similar to that of ours, and particularly as to the time at which the cause of action accrued, for this is the principal question presented for our determination. In order to arrive at any satisfactory solution of this question, it becomes necessary to trace minutely the history of legislation and judicial construction as applied to this question. Anciently, at the common law, any premium taken for the use of money was an offense. Such a premium was denominated "usury," no such term as "interest" being known to the law. By the statue of 111 Henry VII and 111 Henry IV, all usury is damned and prohibited as being against the law of God and the laws of the realm and the law of nature. 3 Inst. 152. The statute of 37 Henry VIII, chapter 9, although entitled "An act against usury," was the first English statute that undertook to make usury in a limited degree lawful. This statute was repealed by 5 and 6 Edward VI, but was reenacted by 13 Elizabeth, chapter 8. Various enactments followed until the year 1713, when an act very similar in terms to our own made all bonds and assurances of title void whereupon there should be reserved or taken more than ten per cent per annum; and also gave a right of action for treble the

value of the money lent against the lender if he should receive or take more than five per cent per annum. A case involving the construction or this statute came before the court of common pleas, and is reported in 3 Wilson, at page 259. The question arose upon the statute which limited the right of action to one year from and after the commission of the offense. In that case, as in this, the usurious interest was retained by the lender out of the amount advanced on the loan; that is, was paid out of the borrowed money, and a note executed for the entire amount. The note was afterward paid. The action to recover the penalty was brought more than one year after the loan, but less than a year after the payment of the note. It was held that the offense was complete when the usurious interest was reserved or taken out of the money loaned, the lord chief justice observing: "To constitute the offense for which the present action [an action of debt under the statute] is brought to recover treble the value of the money lent, these three things must concur: First, a contract between the parties; second, moneys or other things lent; third, above five per cent per annum received by the lender for the forbearance. And whenever these three matters concur, then the offense is committed. No time is mentioned with respect to payment of the principal money lent. The principal money may never be paid, and yet the offense be committed." The doctrine of this case was subsequently approved in the case of Wade v. Wilson, 1 East, 199. The same doctrine has been announced at different times by quite a number of our state courts of last resort. Kirkpatrick v. Houston, 4 Watts & S. 115; Grow v. Albee, 19 Vt. 543; Nelson v. Cooley, 20 Vt. 204; Com. v. Frost, 5 Mass. 53; Seawell v. Shomberger, 2 Murph. L. & E. (N. C.), 200. These and many other cases that might be cited to the same effect hold that, within the meaning of the statute

which defines the offense and limits the time within which an action may be brought to recover the penalty, the right of action accrues whenever any money is reserved or received by the leader which is intended at the time of such reservation or reception to be applied in the satisfaction of the usury. This construction cuts off entirely the locus penitentiae, and taints the transaction in its very inception. The reason for this construction is thus stated by the supreme court of Pennsylvania in the case of Kirkpatrick v. Houston, supra, as follows: "Any other interpretation of the act would put it in the power of the lender to stamp the character of guilt or innocence on it at the precise point of time convenient for him to elude the prosecution by means of the limitation attached to it. Should the borrower sue at the receipt of the first payment, he might be told that he was too soon; should he wait until the whole was paid, he might be told that the offense had been committed long before, and that the year had gone by." In this case, however, the learned chief justice (GIBSON) uses a single expression that, in our opinion, militates strongly against the doctrine contained in the quotation just given, and furnishes excellent grounds for reaching a different conclusion. He says: "I will not say that the defendant might not lawfully receive pro tanto payment specially in discharge of what was lawfully due, for it is the corruption of taking and not the corruption of the contract, which constituted the offense to which the penalty is annexed." The doctrine of this case, therefore, fixes the liability of the lender absolutely by the receipt of any part of the usury as such, and henceforth there is for him no locus penitentiae.

The same construction which gives a right of action under the statute just as soon as any portion of the usurious interest has been received, without

regard to whether any portion of the sum advanced has been returned, as a rule treats such contracts void as to the whole transaction. It is therefore insisted with much zeal and ability by the counsel for the defendant in error that there was no legal portion of the debt to which this usurious interest could be applied, and that, therefore, the doctrine of a locus penitentiae has no application; that, the legislature having provided a penalty for the exaction of usury, any contract which embraces usury is void; that no right of action can arise out of a transaction which constitutes within itself a misdemeanor; that "there can be no civil right where there is no legal remedy, and there can be no legal remedy for that which is itself illegal;" thus invoking the application of the maxim "ex turpi contractu non oritur actio." This proposition might be accepted as elementary were it not for the difficulties announced at the threshold of this opinion, arising out of the real nature of a usurious transaction. Is the exaction of usury to be regarded at this time, and under existing legislation, as such an offense as to invoke the application of this maxim, with all of its attendant disabilities? It sheds much light on the subject to note the fact that the tendency of more modern legislation and judicial determination of this question has been in the direction of mitigating the rigor of the common law rule that treated all transactions tainted with usury as void, and which also treated any exaction of usurious interest as an offense against as well the moral senses and the laws of God as against those of the realm. The supreme court of Pennsylvania, which in 1842 decided the case of Kirkpatrick v. Houston, 4 Watts & S., supra, wherein it was held that "the receipt of money on account of a usurious contract is a consummation of the offense, from the consequences of which the party can not relieve himself by subsequent release of the

excess which was usurious," having a similar question before it in 1889, held as follows: "The ruling complained of in the first specification of error was justified by the case of Brown v. Bank, 72 Pa. St. 209, where it was held that it is actual payment on the foot of the usurious contract, either in part or in whole, which consummates the usury, and from which the limitation of the action for the penalty commences to run. If this were not so, and the usury is complete by merely including it in a renewal note, the penalty might be recovered without the payment of either principal or interest." Kearney v. First National Bank, 18 Atl. Rep. 598. So, also, in the state of Massachusetts we have aleady seen the doctrine held in the case of Com. v. Frost (decided in 1809), that the offense of usury is complete if more than the legal interest is paid at the time of the loan whether the principal sum is ever refunded or not; and yet it has since been held by the same court that there can be no recovery of usury until the principal and legal interest have been paid; that, up to the receipt of the last payment, the lender has his locus penitentiae. Stevens v. Lincoln, 7 Metc. 525; Saunders v. Lambert, 7 Gray, 484. So, also, the doctrine laid down in the case of Nelson v. Cooley, 20 Vt. 204, supra (decided at the February term, 1847), is in effect overruled by the same court in the case of Harvey v. Nat. Life Insurance Company (decided at the May term, 1888). 14 Atl. Rep. 7. So, also, there has been by the English courts a marked modification of the doctrine; for while, as we have seen that the rule laid down in the reign of George III in the Loyd v. Williams case, became the leading authority for that construction, both in England and in this country, the same court has since that time, in the case of Scrugg v. Freeman, 2 Bos. & P. 381 (decided April 23, 1801), held that in a transaction wherein £500 were handed to the borrower,

and by him £50 were handed back to the lender, there was, in contemplation of law, a loan of but £450.

We think that the better rule is to treat the usurious transaction (or rather, the transaction claimed to be tainted with usury) as valid to the extent of the principal sum and the legal interest, and to treat all payments made thereon, whether received as usury or as a bonus or commission, eo nomine as a reduction of the legal interest and principal.

This doctrine seems to have the support of the following authorities: Kendall v. Crouch, 88 Ky. 199, 11 S. W. Rep. 587, cited in Neale v. Rouse, 19 S. W. Rep. (Ky.) 171. So, also, in the case of Kearney v. Bank of Clarion (Sup. Ct. Pa., tried October 18, 1889), reported in 18 Atl. Rep. 598, the court cites with approval the case of Brown v. Bank, 72 Pa. St. 209, already referred to. The supreme court of Nebraska, in the case of Hall v. First National Bank, reported page 150, 46 N. W. Rep., holds to the same doctrine, declaring that it would be a reproach upon the law to apply payments so made to the discharge of a usurious interest, and at the same time exact as a penalty the forfeiture of double the amount. In the case of Harvey v. National Life Insurance Co. (Sup. Ct. Vt.), reported at page 7, 14 Atl. Rep., it was held that where, on the receipt of a note of $1,000 and interest, the lender counted out $1,000 in money and then took therefrom $100, being the usury agreed upon, the statute of limitations does not begin to run against an action to recover the usury, until the note is fully paid. This doctrine, we think, is in accord with the decisions of the supreme court of the United States, rendered in the construction of a statute so nearly resembling our own as to make the decisions of that court instructive, if not conclusive. What is known as the "National Banking Act" (R. S., sec. 5193), or so much as is necessary to quote, is as follows: "The taking, receiving,

reserving, or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it or which has been agreed to be paid thereon. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid from the association taking or receiving the same: provided, such action is commenced within two years from the time the usurious transaction occurred." While the phraseology differs, the two statutes provide for substantially the same thing,—the recovery of usurious interest within a given time "after such cause of action accrued" (the New Mexico statute), or, "from the time the usurious transaction occurred" (the national statute). The construction given to this latter statute is that the limitation runs from the date of the last payment. Duncan v. First National Bank, Mt. Pleasant, 1 Nat. Bank Cas. 362, 72 Pa. St. 209; Kearney v. First National Bank, 18 Atl. Rep. (Pa. Sup. Ct.) 598; 14 Atl. Rep. 8, 9. And, indeed, upon reason as well as upon authority, we think this is the proper construction, if we are to give effect to the contract out of which the usurious transaction grows. If the contract is valid to the extent of the principal and legal interest, there seems to be no sound reason why the borrower should be allowed to recover as a penalty twice the amount of the usury, while he is still indebted to the lender the entire amount of the principal and legal interest. We have given careful attention to the argument pressed upon our consideration with so much zeal and ability, and supported by so many authorities of great respectability, in support of the doctrine that this contract, being usurious, was therefore void. It is now well settled, however, that the reserva-

tion of usurious interest does not render a contract void, unless the statute prohibiting the usury in express terms declares such contract to be void. In the case of Farmers National Bank v. Dearing, 91 U. S. 35, Mr. Justice SWAYNE, delivering the opinion of court, said: "Where a statute prescribes a rate of interest, and simply forbids the taking of more, and more is contracted for, the contract is good for what might be lawfully taken, and void as to the excess. Burnhisel v. Firman, assignee, 22 Wall. 170; German v. Calvert, 12 Serg. & R. 46. Forfeitures are not favored in the law. Courts always incline against them. Marshall v. Vicksburg, 15 Wall. 156. When either of two constructions can be given to a statute, and one of them involves a forfeiture, the other is to be preferred. Vatt. 20th Rule of Construction. Where a statute creates a new offense and denounces the penalty, or gives a new right and declares the remedy, the punishment or the remedy can be only that which the statute prescribes. Stafford v. Ingersol, 3 Hill, 38; First National Bank of Whitehall v. Lamb, 57 Barb. 429." And again, in construing the national bank act, the same court, speaking through Mr. Justice HARLAN, in the case of Oates v. National Bank, 100 U. S. 249, says: "The statute under which the bank was organized, known as the 'National Banking Act' does not declare the contract under which the usurious interest is paid to be void. It denounces no penalty other than a forfeiture of the interest which the note or bill carries, giving to the debtor the right to sue for and recover twice the amount of interest so paid. If we should declare the contract of indorsement void, and, consequently, that no right of action passed to the bank on the note transferred, as collateral security, an additional penalty would thus be added beyond those imposed by the law itself. On what principle could this court add another to the penalties declared by the law itself?

De Wolf v. Johnson, 10 Wheat. 367; Farmers and Mechanics National Bank v. Dearing, 91 U. S. 29; Barnet v. National Bank, 98 U. S. 555." If it should be insisted that this contract ought to be declared void for the reason that its execution was made a misdemeanor by the statute, in which particular it differs from the national bank act, which does not make the act a misdemeanor, but simply declares a forfeiture, we reply that our construction is nevertheless within the rule laid down by the supreme court in the case just quoted. It is true that the statute makes such a transaction a misdemeanor, but the same statute prescribes the punishment, to wit, a fine of not less than $25 nor more than $100, and the forfeiture of double the amount of such interest so collected or received. If the legislature had intended to forfeit the entire debt, or to render the transaction void, nothing would have been easier than to have so declared. The instructions of the learned judge who tried this cause in the court below were given in strict accord with the theory of the leading English case (which, as we have seen, has been adopted by some of our state courts), and was a clear and correct exposition of the law from that standpoint. And while we admit that there is some conflict of authorities on the points mainly controverted, we are nevertheless of the opinion that the judgment was erroneous, and that the cause must be remanded, with directions to the court below to proceed in accordance with the views herein announced.

Seeds, Lee, and McFie, JJ., concur.