Judge Robertson,
delivered the opinion of the Court
In consideration of a series of loans of money by Sam icl Churchill, to John Gwathmey, and to him and his.partner Anderson, Gwathmey and Anderson, on a settlement, executed their joint note to Churchill, on the 28th of November, 1814, for $2,596. Churchill being indebted to Alexander S. Bullit, as guardian for Eliza C. Prather, Gwathmey and Robert Breckenridge as his surety, gave their promissory note to Bullit, on the 4th of November, 181-5, at the instance of Churchill, and in consideration of the note of Anderson and Gwathmey, and in discharge of the debt, due by Churchill to Bullit. The amount of this debt being $3,510, the note of Gwathmey and Breckenridge, was given for that sum; and the note of Gwathmey and Anderson, and that of Churchill, were thereupon surrendered and cancelled.
Gwathmey having become insolvent, Breckenridge was compelled to pa^ to Bullit’s representatives the, whole amount of the note, with the accruing interest and cost, ($4,739 69 1-2.)
Breckenridge filed a bill in chancery, against Churchill and Bullit, to injoin Bullit’s judgment, and obtain relief fromil, in consequence of usqry. Bul-lit having afterwards died, the suit was revived against his personal representatives. They insisted, in their answers, that A. S. Bullit acquired the not abanafide^ for a full and valuable consideration, to-wit: the note of Churchill for the same. amount, and without any. *12 notice of usury. Churchill did not answer,but 4®' tnurred.
The circuit court dissolved the injunction, and dismissed the bill absolutely; and this court affirmed the decree. See III. Littell’s. Reports, 3.
Immediately after this affirmrance, Breckenridge filed the bill in this case, against Churchill' and Gwathmey,, changing that $>1,576 7 cts. of the note by Anderson and Cwathney for $2,596, were for usury, reserved by Churchill, in various loans from 1808 to 1814; that there was enormous usury in the note to Bullit; that $500 .of it were charged for negotiating the arrangement with Bullit; whereby the note of Gwathmey and Anderson to Churchill, tor $2,596 was-surrendered in exchange, for that of Gwatfcmey and Breckenridge to Bullit, for $3,510,.and in discharge of Churchill’s note to Bullit for the same sum.
That Gwathmey had assigned to Breckenridge, his right to recover from Churchill, all the usury, which had been exacted, and that Breckenridge bad released Gwathmey from liability to him, for the money which he had paid to Bullit’s representatives.
The bill prayed fox a decree against Churchill, for the amount of the usury, and avered the insolvency of Gwathney, and that Breckenridge had no notice that there had been usury, until about the time when his first bill was filed. 1
Gwathmey answered, admitting the allegations of the bill, and asserting that the whole amount of usury, which had been paid to Churchill was $2,099 54 cents, of every item of which, he had preserved mem-oranda.
Churchill plead the statute of limitations; a demurrer to the plea having been sustained, he filed his answer stilfrelying on the lapse of time. In his answer, he says that his first loan to Gwathmey was $400 in January, 1808; and that he reserved and re-¡ ceived ‡ 12 a month for interest, on this loan. That he made several, syccessive loans afterwards; that in September, 1814, all the'previous loans were settled and adjusted; that on the 28th of November, 1814,. he loaned to Gwathmey, “a large swm” and sold him *13 ¿otne corn, hay, &c. for all which the note for $2,596 was given.
Right to reclaim usury is assignable in equity. A possibility, or contingent interest, is assignable in equity. Chose in action is assignable in equity
Mortgage of all person’s estate, both legal and e-quif-able, does not transfer to assignee, mortgngor’a right to sue for usury.
chaser*for1' valuable con-* «¡¡deration, r”]¡*ef against usury can be had. Secunty eaB" ■not obtain relief against usury, without making principal a yaity, for, recovery by him, would be no bar to recovery by principal.
*13 That in all the loans subsequent to the first in 1808, 1 1-2 per cent, onty, per month, was reserved for interest. That $500 of the note to Bellit, were for “service" without any specification of its character. That $1,576 7 cents, of the note for $2,596 were not usurious as charged; but that this note was for “money borrowed, and produce sold".
Gwathmey’s deposition was taken, and corresponded with his answer.
The circuit court dismissed the bill, and Breckenridge appealed.
That the bill presents a strong and clear case, for the interposition of the chancellor, we cannot doubt. The right ofGwathmey to a reclamation of the usury, by bill in chancery, was assignable in equity; a possibility, ora contingent interest, may be assigned in equity; I. Maddock’s chancery, 437.
A chose in action is in the like manner assignable; lb. 430; many other authorities plight be cited. But the doctrine is too well settled and understood, to require the citation of authorities. Without the assignment, Breckenridge- might be entitled to relief, by making Gwathmey a defendant as he has done. The alleged mortgage by Gwathmey to Greathouse, of all his estate, legal and equitable, prior to the assignment to Breckenridge, could have no effect in this case, for two reasons. 1st. Such a mortgage did not transfer the right of Gwathmey, to sue for usury. 2d. The time for performing the condition in the Mortgage, having expired, the presumption, as between strangers, was that the mortgage was satisfied. Dougherty vs. Kercheval, I. Marshall, 52.
The decree and its affirmance, in the first suit by Breckenridge, present, no obstacle. As to Bullit, there could have been no relief, because he was a purchaser without notice. And as to Churchill, it was not possible that Breckenridge could have been entitled to a decree on his first bill, because Gwatb-mey had aright to sue Churchill for the usury, and as he was not a party, a decree in favor of Brecken *14 ridge, would have been no bar to the enforcement of Gwathmey’s right; and these were the grounds on which the decree, dismissing Breckenridge’s bill, was affirmed. It is clear therefore, that the former suit is no bar to relief in this.
As Gwathmey was not a party to the first suit, we are inclined to think, that the circuit court ought not to have dismissed the bill absolutely; and that it would have been better, for this court to have reversed the decree in that case as to Churchill, and permitted an amendment, bringing Gwathmey before the court, as a party. This would have obviated a difficulty, which will presently occur in this case. But we have no control over the first case, and cannot avert any of the consequences, that may result from the decree, which was rendered in it.
The answer of Churchill virtually admits the most material allegations of the bill. It does not deny, but discloses, usury to a large amount. The Mservice,” unexplained, is only another name for usury. The large sum of moneyf and “the hay, corn,” See. without specification of amounts, evince a disposition to evade a direct and explicit answer; therefore, in effect, there is an admission of the allegations in the bill. Scott vs. Hume, Lifctell’s Select Cases, 379. The allegation in the answer, that the amount of the note of November, 1814, was all for umoney lent and produce sold f is not inconsistent with the charges of usury, in the bill. It is not shown when the money was lent, or how much was lent, or how much interest was reserved.
Nor is the genera] denial that $1,576 7 were usur rlpus, sufficiently explicit. This is a denial, only of the charge that that sum was the precise amount of usury retained on the note for $2,596. It is not a denial that there was usury in that note.
The deposition of Gwathmey, taken after his release, and before he was a party, was competent testimony, as it had been taken in a suit between the same parties, and Gwathmey was dead. This deposition, if it had not been improperly rejected, would havq proved,, as another, by him, which was admitted, *15 did prove, every allegation in the bill, clearly and indisputably. ' .
Chancery has 'ul“Ptec' as generalaW,> rule ofdecision>
In cases over' which chancellor has exclusive juris--diction, he notices lapse of time, only-os evidence of injustice, or impolicy of granting relief. .
Where chancery and common law courts, have concurrent jurisdiction, time is, generally,. as inexorable a bur in chancery, as at law.
Fraud is exception; for limitation to bill for fraud, does not commence until discovery of fraud.
38 rBn a" gainst assign- or of chose in action, as-signee thereof, is also barred.
*15 But the lapse of time interposes an obstacle to the relief sought in this case, which is not only formidable but insurmountable.
The statute of limitations does not apply, “in pro-pria jure.” to suits in chancery.
But as “equitas se.quitur legem ” chancery has adopted the limitation at law, as a general rule of decision. I. Maddock’s chancery, 79-80; Thomas vs. White, III. Littell’s Reports, 183; Haddix’s heirs vs. Davison, III. Monroe, 41.
In cases over which the chancellor has exclusive cognizance, he does not regard the limitation of analogous cases at law, as conclusive and absolute, but notices the lapse of time, only as evidence of the injustice or impolicy of granting relief, in such cases, therefore, time is susceptible of many explanations, which would not affect the - operation of the limitation, in cases to which it peremptorily applies.
But in those cases, in which chancery and common law have concurrent jurisdiction, time is, generally, as efficacious and inexorable in a court of equity, as it would be in a court of law. In fraud, there is an exception. In chancery, the limitation tq a bill for fraud, docs not commence until the discovery of the fraud. There may be,other exceptions, but they cannot apply to this case. Whatever exceptions there may be, must be very few, and should be well defined.
As a general rule, chancery should not relieve, when the remedy at law is barred by time. And the cases must be extremely rare, in which a complainant, whose right is barred by law, can, be relieved in chancery.
In this case, Breckenridge’s equity is derivative. He has no, right which he has not acquired from Gwathmey, or which Gwathmey had not. See the former case, III. Lilteli, 3.
The same time which would bar the one, must equally affect the other. Therefore, if Gwathmey *16 wa'sbarred, Breckenridge could not enforce his right, Consequently, it is not material--whether five years had or had not elapsed, from the discovery of the usury by Breckenridge. Gwathmey knew of each usurious reservation and charge, as they occurred. And the situation of Breckenridge can be no better than that of Gwathmey.
Cause of action, for usury, is consummate eo in-sterna, it ¡3 pa id, and limitation begins to run simultaneously.
Taking in note from usurer, an ! executing another in lieu thereof, to creditor of usurer, gives obligor instantaneous tight of action, against usurer for the usury.
Denny, for appellant; Crittenden and Hoggin, for appellee.
The cause of action for usury* imminences the instant when it is paid, and consequently, the limitation commences simultaneously. The usury which had not been paid before, was all paid by the note of Breckenridge and Gwathmey to Bujlit. If the note to Bullit had never been paid j Churchill would not have been liable to Bullit, nor would-the right of Gwathmey to restitution of usury, have been affected. This note discharged that of ,$2,596 to Churchill* and that of Churchill to Bullit; Bullit had no longer any demand on Churchill, and Gwathmey was no longer the debtor of Churchill» The payment of the note to Bullit was, as to Churchill* llres inter alios acta.” Gwathmey could, therefore, have sued Churchill in assumpsit or in chancery, for the usury, the day after betook up the note for $2,596. That right was lost by lapse of time, before this suit was brought; and, therefore, he had no available right to assign to Breckenridge, or if he had, Breckenridge has lost it by his forbearance. The right which his bill seeks to enforce, was a clear subsisting right, more than five years prior to the institution of this suit.
Wherefore, we are constrained to affirm the decree of the circuit .court.