No. 97.—JOHN H. JONES, plaintiff in in error, *vs.* ROBERT JOYNER and others, defendants.

[1.] An injunction will be generally dissolved upon the coming in of the answer, fully denying the equity of the bill.

[2.] If a surety to an usurious contract pays ususious interest, knowing it to be such, he cannot recover it back out of his principal. The answers deny fully the equity of the bill in this case. Injunction dissolved.

Jones *vs.* Joyner and others.

In Equity, in Randolph Superior Court, motion to dissolve injunction. Decision by Judge WARREN, April Term, 1850.

On the 11th January, 1846, John H. Jones, then a citizen of Richland District, South Carolina, borrowed $1200 of James S. Guignard, Jr. and gave to him a bond for the payment of the same, with William Geiger, Jr. Charles Neiffer, John H. Threewitt and William H. Cassin, as sureties. At the same time, Jones executed a mortgage on certain negro slaves, to indemnify his sureties (who were also his sureties on other claims,) from all liability on his account. Shortly thereafter, he removed to Randolph County, Ga. On the 17th February, 1849, Robert Joyner, as the assignee of the mortgagees, proceeded to foreclose the mortgage for $1806 69, principal, and $237 25, interest. Under the *fi. fa.* issued upon this foreclosure, the Sheriff proceeded to levy and sell a portion of the mortgaged property. In February, 1850, John H. Jones filed a bill, charging the foregoing facts, and further, that at the time the money was borrowed, by agreement with his sureties, the money was placed in their hands, to be paid out to his creditors—the said Guignard discounting the notes at the usurious rate of 19½ per cent. interest per annum, and paying over to the sureties only the sum of $975. The bill alleged that the sureties paid out only about $500 towards the demands against Jones, and the balance was unaccounted for, except $240, for which Charles Neiffer gave complainant a due bill; that the pretended payment by the sureties to Guignard, and assignment to Joyner, were merely colorable and fraudulent. The bill alleged that the poverty of complainant placed it beyond his power to pay the amount of $500, admitted to be due before the sale, having none but the mortgaged property in possession. The bill prayed an account, from the sureties, of the money placed in their hands; that the due bill of Neiffer might be allowed as a set off to complainant—Neiffer acting as agent for the other sureties—or else might be allowed out of Neiffer's share, if he had any; also, an injunction to the Sheriff to restrain him from paying over any of the proceeds of the sale of the negroes, except the $500 admitted to be due.

The defendant, Guignard, admitted the loan, but denied the usury, stating that he paid to Jones the full amount borrowed, ($1200,) and that Jones handed him back as a *bonus* or commis-

sions $60 ; that nothing but lawful interest had ever been charged ; that the sureties had taken up the bond of Jones, and given him their own bond in payment. He denied all fraud or combination.

Joyner, by his answer, stated that he was acting for the securities, and had neither personal interest in the matters or knowledge of the facts charged in the bill.

The sureties, by their answer, admitted the giving of the bond and the loan of the money, but denied positively that any portion of it was paid over to them. Neiffer stated that he was present, and saw the money paid over by Guignard to Jones ; he farther stated that Jones being indebted to him about $240, for money paid out by him for Jones, on account of debts specified in the answer, and not being prepared for a final settlement, Jones paid him the sum of $240, for which he gave his duebill, to be received in settlement with Jones. The sureties, in their answer, specified the debts paid by Jones with the $1140 received of Guignard, and also, the debts paid by them, for which they had, through their agent, Joyner, foreclosed the mortgage.

Upon the coming in of the answer, the counsel for defendants moved to dissolve the injunction, on the ground that the equity of the bill had been sworn off.

The Court granted the motion, and complainant excepted.

Taylor, for plaintiff in error.

Kiddoo, for defendants in error.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.] The question to determine in this case is, whether the answers have sworn off the equity of the bill. If they have, there was no error in dissolving the injunction. After a careful reading of the bill and the answers, I am constrained to say that I have never seen all the points in a bill more directly negatived than in this instance. There is but a single particular of reliance on the part of the plaintiff in error, which has even the shadow of plausibility, and that is his claim to have the injunction held up, that he may be credited with $60 of usury, charged to have been received by Mr. Guignard, with the knowledge of these defend-

ants. In every other particular, there is a remarkable antagonism between the bill and the answers. All cases like this require that the facts alleged, and the answers to the allegations, be stated, in order to an understanding of the judgment of this Court. The bill states that the complainant, being in debt, proposed to the defendants, that they stand his security for the loan of $1200, which they consented to do, upon his executing to them a mortgage upon ten negroes. The bond of the plaintiff was accordingly executed, with the names of the defendants as sureties, and sold to Mr. Guignard at a discount at the rate of some 19½ per cent. each, for six hundred dollars, bearing interest from date; that a mortgage was executed to the defendants on the negroes, and delivered to them to secure them against liability on their suretyship; that the money raised by the loan was turned over to the sureties, with the understanding that they were, with it, to pay certain outstanding debts of the plaintiff; that after the execution of the mortgage, they consented to become his securities for certain other debts, not originally embraced in the mortgage, provided he would make upon it such an indorsement as would hold the mortgaged property liable as a security against their suretyship on these last named debts; that this was accordingly done. The counsel in the argument claims, that when the notes were discounted to Guignard, there was an extra allowance to him of sixty dollars, as usury, which ought to be credited on the mortgage in favor of the plaintiff, because the sureties and mortgagees, with knowledge that this sum was allowed to the lender when the bonds were discounted, had paid to him, when they took up the bonds, their full value—the counsel holding that they ought to have defended against this usury, and failing to do it, they have no right to come upon him for remuneration. The bill farther states, that the defendants having received the money raised thus by the loan, have applied only some $500 of it to the satisfaction of plaintiff's debts, and have not paid the other debts, which they assumed to pay for him, and which were embraced in the mortgage by the indorsement thereon; that one of the defendants, Neiffer, is indebted to the plaintiff on a note for $240, given to him for so much of the money raised by the loan, and which was in his (Neiffer's) hands—the bill claiming a credit on the mortgage as against Neiffer for the amount of this note. The mortgage having been regularly fore-

closed by the sureties for the whole amount of what they claim to have paid or assumed for the plaintiff, execution issued, and the property being sold, the bill prays an injunction against the Sheriff from paying the money to them—asks an account from them as to all the transactions, and a decree that whatever of the fund remains in the hands of the Sheriff, after an accounting, be paid to the complainant. Such are the material averments in the bill, and it makes out a strong case in Equity ; but " *audi alteram patem.*"

The four defendants, who were the sureties of the complainant, answer the bill, and concur in saying, that they became his sureties for twelve hundred dollars, by signing the six hundred dollar bonds, as charged, which were delivered to him, (the plaintiff,) ; that he sold these bonds to Mr. Guignard, and received from him the money—they deny any knowledge of the usury (except Neifer, whose answer, in that regard, I shall presently refer to.) They all deny, most solemnly, that one dollar of the money thus borrowed came to their hands. They not only aver that he received it, but show what he did with it. They say that a mortgage was executed to them, as charged, to secure them against loss as his sureties, for the twelve hundred dollars ; that subsequently to its execution, the plaintiff solicited them to become his security for other debts, which three of them consented to do, upon his securing them by a proper entry or indorsement on the mortgage, which he agreed to make, and which they suppose was made ; that when the bonds sold to Guignard became due, they took them up by giving him their own obligations ; that under the second arrangement, by which they became plaintiff's sureties for other debts, they, to wit : Geiger, Neiffer, and Throewitt, paid or assumed debts of his to the amount of some nine hundred dollars—they specify the debts ; that they do not owe him anything, but on the contrary, independent of what he owes them on account of their suretyship, he is indebted to them, individually, in different sums. They say that the mortgage was foreclosed for the amount of their liabilities on his account as his sureties.

Mr. Guignard, who is also a party to this bill, answers, that he loaned $1200 to the plaintiff, by purchasing his bonds, with defendants as securities, for six hundred dollars each ; that the plaintiff himself delivered to him these bonds ; that *he paid to him the money,* to wit : $1200. He denies that there was any usury

whatever in the contract, but states, that after he paid the plaintiff the money, he handed him back $60, as a commission or *bonus* for the loan, and that when these bonds both fell due, they were taken up by the defendants—they substituting their own obligations therefor.

Neiffer, one of the defendants, and also one of the sureties, answers, in addition to this joint answer with the others, that he was present when the bonds were sold to Guignard by the plaintiff; that Guignard *paid to him* for them, $1200 ; "that is to say, (to use the words of the answer,) he saw the said Guignard deliver to said Jones a check on the Commercial Bank of Columbia for $1100, and pay him the sum of $100 in cash ; *that out of the cash thus received by said Jones, the said Jones returned to said Guignard the sum of $60, as the said Jones said, for the accommodation of the loan.* Neiffer further, individually answering, says, " that the said John H. Jones, being indebted to him in the sum of $240, and upwards, that is to say, (going on to specify the several items of the indebtedness,) the said Jones placed in his hands the sum of $240, which, at the time, was supposed to be about the amount which the said Jones owed him, but not being prepared for a full and final adjustment and settlement of said accounts, he, the said Neiffer, executed the due bill for $240, referred to in the bill, and delivered it to said Jones, as an acknowledgment that he had received that amount from him, to be applied to the above debts due by said Jones to him; and the said Neiffer avers, most positively, that such was the understanding of the parties at the time, and denies most positively that he received the said sum of $240 for any other purpose whatever, or that he was, or is, in any wise indebted to said John H. Jones." Neiffer repeats, that the note was given simply as an acknowledgment of so much money received, as a matter of convenience, to be taken up upon final settlement with Jones, and says that in reference to that object, the note was drawn as it was—the negotiability being restrained.

These answers, so fortified and confirmed by each other, annihilate all the equity of the bill. Generally, then, I say, that the equity of the bill is sworn off, and the injunction was properly dissolved. The matter really requires no argument—the statements from the bill and answer are demonstration.

[2.] Respect to the counsel for the plaintiff in error, however,

requires a brief, but more special notice of two points made in the argument. He contends that there was $60 paid as usury on the loan, and that the sureties, not claiming a credit for that sum as usury on the bonds which they took up, and which the law would have allowed, had they compelled Guignard to sue and plead to the action the Statute of Usury, they are not entitled to recover back out of the plaintiff that amount on the mortgage. The principal asserted here is a sound one, and has been recognized by this Court in *Peck and Whitehead*, 1 *Kelly*, 140, and in *Hargraves and another vs. Lewis*, 3 *Kelly* 167. The proposition is this—" if usury is paid by a surety to the contract, cognizant of its being usurious, he cannot recover the usurious interest from his principal." This principle is sound only when the sureties *know* that there is usury in the contract. If this contract was usurious, there is no evidence that any of these defendants knew it to be so, except Neiffer, who was present when the bonds were sold to Guignard by Jones, and the money paid. They are therefore, not affected with notice of the usury. If there was usury in the contract, Neiffer can be alone affected by it. From the answers, was there usury in this contract? Clearly none, unless the return of the $60 was usury, for both the lender, Guignard, and Neiffer, answer that the full amount of the bonds, to wit: $1200, was paid to Jones. Does the return of $60, under the circumstances, amount to usury? We think not. The answers show that in the contract between Jones and Guignard, there was no usury taken, for they show, in fact, a payment of the whole sum due on the bonds, they remaining from that time at lawful interest. What else do they show? The answer of Guignard is, that *after he had paid* the plaintiff, Jones, the $1200, he handed him back $60 as a commission or bonus for the loan ; and the answer of Neiffer, who was present, is, that Guignard paid Jones $1200, in a check for $1100, and $100 in cash, and that " out of the cash thus received by Jones, he returned to Guignard the sum of $60, as the said Jones said, for the accommodation of the loan." These answers do not show a contract, in the outset, that Jones should pay and Guignard receive $60 as a bonus ; and if there is no understanding of this sort, it is not usury. By the Common Law, the contract must be tainted, *ab initio*, to be usurious.

The answers of Guignard and Neiffer, particularly Neiffer's,

negative the idea of any such contract. His testimony is, that the contract being executed without usury, Jones voluntarily returned to Guignard $60, as he himself said, for the accommodation of the loan. There was no contract at any time about the $60; Jones voluntarily moved to return $60; Guignard passively received it. It was a gift which Jones had the right to make, and Guignard the right to receive.

The other point is in relation to the $240 note. The bill claims that this is due to him by Neiffer, and ought to be allowed as an offset to Neiffer's claim on the fund as surety, raised on the foreclosure of the mortgage. But what does Neiffer say in his answer about this note? He says that he does not owe Jones anything; that aside from what Jones owes him as his surety, he is indebted to him in a considerable sum; that Jones, being indebted to him personally, and not as surety, paid him $240 on account of that indebtedness; that it being inconvenient at the time to come to a final settlement, the note claimed by Jones to be due to him for $240, was given as an *acknowledgment of that sum then paid, to be taken up upon final settlement.*

Let the Judgment be affirmed.