CASE 53—ACTION ON NOTE—JANUARY 24, 1899.

# Turner, Etc. v. Gill, Etc.

### APPEAL FROM LOGAN CIRCUIT COURT.

FEME SOLE AS SURETY.—A woman, authorized to contract as a *feme sole* under the statute in force prior to the act of 1894, could not interpose the defense of coverture for the first time in this court when sued as surety on a note. Such a defense to be available must be seasonably pleaded.

(JUDGE PAYNTER DISSENTING.)

S. R. CREWDSON FOR THE APPELLANT.

Mrs. Turner could not be bound as surety, because she was a married woman. Her right to bind herself as *feme sole*, is not alleged. Bidwell v. Robinson, 79 Ky., 29.

SAM HOOKER FOR THE APPELLEES.

1. Any defect in the reply was cured by the rejoinder. Bliss on Code Pleading, sec. 438.
2. Mrs. Turner's status as *feme sole* is shown by the record. Drake's Admr. v. Semonis, 82 Ky., 291; Wilson v. Hunt's Admr., 6 B. M., 379.

S. R. CREWDSON FOR APPELLANT IN A PETITION FOR A RE-HEARING.

Additional citation: Stevens v. Deering, 10 Ky. Law Rep., 393.

JAMES H. BOWDEN AND SAM HOOKER IN RESPONSE.

1. The disabilities of a married woman are her personal privileges and must be pleaded. 99 Mass., 199; 7 Gray, 338.
2. Failure of the plaintiff to allege in proper way that defendant is a *feme sole* can not be complained of after judgment. 29 S. W., 639.
3. Party failing to plead is bound. Bliss on Code Pleading, sec. 430; 6 Ky. Law Rep., 664.

Turner, Etc., v. Gill, Etc.

4. A personal judgment against a married woman may be valid and it should appear to the contrary before the court should reverse and especially so when she was *sui juris* when sued.  83 Ky., 313; 4 Ky. Law Rep., 955.

5. Coverture is new matter and must be pleaded.  Bliss on Code Pleading, secs. 327, 330, 340, 343, and 352; Pomeroy Remedies and Remedial Rights, secs. 659, 660 and 711; 83 Ky., 313.

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

This is an appeal by appellants from a judgment against them upon a promissory note executed to appellees, Turnelly & Gill, to secure them against possible loss growing out of advances to Bradford & Turner for the purchase of loose tobacco.  Previous to the execution of the note, L. A. Bradford and Q. M. Turner, constituting the firm of Bradford & Turner, were engaged in the business of buying loose tobacco and shipping it to Turnelly & Gill, and they had engaged to do so during the tobacco season which began in the fall of 1893.  Turnelly & Gill were warehousemen in Clarksville, Tenn., and made advances at various times to Bradford & Turner, the business being carried on in the name of L. A. Bradford.  They were to charge interest on their advances, sell the tobacco shipped them, and credit the proceeds on the account.  Fearing that, at the price tobacco was bringing, there would be a loss, they sought to have Bradford & Turner protect them.  So the note sued on was given on March 12, 1894; and Bradford & Turner, together with appellant L. A. Turner, also executed a writing pledging their individual crops of tobacco for the payment of such loss as might result.  There was a loss of $303.18, for which the court below gave judgment against appellants on the note.

Q. M. Turner denies that he was a partner of Bradford in this transaction, but we think the record shows that he was a partner.  It is also claimed by the appellants that, after

the execution of the note, appellant L. A. Turner became the partner of Bradford in the purchase of the tobacco. If this be true, Turnelly & Gill received no notice of the fact; the business being conducted, as before, in the name of L. A. Bradford.

Appellant L. A. Turner denies liability for certain advances made before the execution of the note, on the ground that they were made to Bradford individually, and not on account of the firm of Bradford & Turner. The advances were made in the purchase of tobacco during the tobacco season beginning in the fall of 1893. The writing which Turnelly & Gill delivered when the note was given shows the note was to protect them for the advances made during this season to Bradford & Turner.

It is also contended in behalf of appellant L. A. Turner that the note was intended only to secure advances thereafter made. But at the time of its execution advances had been made, and tobacco had been bought with the money thus advanced. It was contemplated that Bradford & Turner would ship such tobacco as had been bought, and buy other tobacco and ship it; and the plain meaning of the writings, taken as a whole, was that they would secure Turnelly & Gill against any loss on that season's business. If L. A. Turner became a partner of Bradford after the execution of the note, that would not affect her liability in any way in this action.

It is also contended in behalf of appellant L. A. Turner that the judgment as to her should be reversed because it appears from the record that at the time the note was given she was a married woman, the wife of Q. M. Turner. The note sued on was given before the passage of the act approved March 15, 1894, removing to some extent the disabilities of married women; but the suit was filed after that

act took effect.  She pleaded in her answer an elaborate defense, but did not plead coverture.  The pleadings do not show that she was a married woman when the note was given.  After judgment, pleadings are to be construed so as to sustain it, if this can be fairly done; and, tested by this rule, the amended petition shows only that she was a married woman when it was filed, and not that she was a married woman when she executed the note.  But this fact is shown by the exhibits and proof in the case.  The same exhibits also show this: "Mrs. L. A. Turner signs this note as a *feme sole*, and binds her estate for its payment."  This may not, perhaps, be sufficient to show that Mrs. Turner was a *feme sole*, but it was at least sufficient to suggest the question whether she was bound or not; and we are constrained to believe that, in the elaborate defense made for her, the plea of coverture, which, if available, would have defeated the action at the threshold, was not overlooked, but deliberately omitted.

The question therefore arises, can a married woman, who is authorized by the statute to sue and be sued as a single woman, deliberately refuse to plead her coverture when sued upon an obligation given before that statute was passed, and, when she has been beaten on the issues she saw fit to raise, obtain a reversal in this court by reason of her coverture, when she did not present that question in any way to the court below?

Section 114 of the Code of Practice provides that parties must before trial form a material issue concerning each cause of controversy.  Section 386 also provides that judgment shall be given for the party whom the pleadings entitle thereto, though there may have been a verdict against him.  Pursuant to these sections, it has been held that the defendant is bound by his pleading, and the court can not

[27]

consider a defense which he failed to set up in his answer. (Demmien v. Bowler, 16 Ky. Law Rep., 399). We see no reason why appellant Turner should not be governed by the same rule. She has been authorized to sue and be sued as a single woman, and stands before the law in this respect just as a divorced woman or a widow would have stood, prior to the passage of the statute referred to, if sued upon an obligation made during her coverture. 1 Chit. Pl. p. 449, thus lays down the rule: "Coverture at the time when the supposed contract was entered into must be pleaded in bar." It seems to us that this must necessarily be the rule under our Code of Practice, which requires the parties to state in their pleadings the facts relied on for their cause of action or defense. The appellant Turner has had her day in court, and we see no reason for setting aside the judgment against her, because of a defense she failed to plead, that would not apply to any other litigant; for by the statute she is given, in effect, the rights of a single woman. Previous to the passage of this act a married woman had no power to enter her appearance to an action or to employ an attorney, or to make a contract binding herself personally. She could bind her estate, but could create no personal liability by contract. Her existence was merged in her husband, and she could only appear in an action by him. Under this system it might well be that a personal judgment against a married woman would be unauthorized in a suit on a contract made by her, and be set aside on appeal, for the reason that a judgment is but a contract of record, and she could create no personal liability by this contract, as she had no power to create a personal liability by contract. But when she may contract and sue and be sued as a single woman, the reason for this rule ceases, and she is bound by the judgment, just as she would

be by any other contract made at the time it is entered. This adds nothing to the obligation of the note in this case. The question is not whether the note was a valid obligation or not. That was a question to be litigated when she was sued, and in litigating this question, appellant stood just as a widow would have stood under the former practice, and might put in such defenses as she saw proper. If she failed to make a defense that would have been available to her, she is bound by her pleading, like any other litigant; and the judgment against her can not be reversed on account of her coverture, as this defense appears first to have been presented in this court. The judgment is therefore affirmed.

JUDGE PAYNTER AND CHIEF-JUSTICE HAZELRIGG DISSENT. JUDGE PAYNTER DELIVERED THE FOLLOWING DISSENTING OPINION.

This action is based on the following note: "$1,000. Eight months after date, we, or any of us, promise to pay Turnelly & Gill one thousand dollars. Mrs. L. A. Turner signs this note as a *feme sole*, and binds her estate for its payment. This note is not transferable. This March 12, 1894. L. A. Turner, L. A. Bradford." As part of the transaction of the execution of the foregoing note, Turnelly & Gill executed a writing which is as follows, to wit: "L. A. Bradford & Q. M. Turner and wife have this day executed to us a note for one thousand dollars, due in eight months, and nontransferable. This note is made to secure Turnelly & Gill against possible loss growing out of advances they made during this year to Bradford & Turner for the purchase of loose tobacco, and, if no such losses are made, then this said note is to be surrendered to the parties making it; and, if such losses should be less than one thousand dollars, then only the loss will be collected by us on the

note. This March 12, 1894. Turnelly & Gill." The last
writing was pleaded by the defendants.

· Until the act which authorized courts of equity, on the
petition of husband and wife, or on her petition, the hus-
band being made a defendant, to empower a married wo-
man to contract and obligate herself as a *feme sole* she
could not enter into any contract by which she could bind
herself *personally*,—even when she had a separate estate
she could not do so; neither under the statute which al-
lowed her to execute *obligations* for necessaries for her-
self, could she bind herself *personally*.          ·

This court said she could not appear in an action and re-
lease errors, and that there was no case on record where a
personal judgment had been rendered against a married
woman on a contract which she had made.   Breckinridge v.
Coleman, 7 B. Mon., 334.   Then, unless a married woman was
empowered to do business as a *feme sole,* as authorized by the
statute, no personal judgment on her contracts could be ren-
dered against her.   Agnew v. Williams, 1 Bush, 4; Sweeney
v. Smith, 15 B. Mon., 328.   This court, in Parsons v. Spencer,
83 Ky., 305, and Spencer v. Parsons, 89 Ky., 577, [25 Am. St.
R., 555; 13 S. W., 72], recognized the correctness of the doc-
trine as stated, and expressly held that in an action to en-
force such a personal judgment, though it did not
so appear in the record of the case in which it was
rendered, it could be shown, to defeat its enforce-
ment, that it had been rendered on an obligation exe-
cuted by a married woman during coverture which
did not create a personal liability.

In an action of A. against B. & C. on a note executed un-
der the old law, if it is averred that C. was the wife of B.
when the note was executed, a demurrer should be sustain-
ed to the petition, because instead of stating a cause of ac-

tion against C., it would show that no cause of action exist-
ed against her on the note.   If there was no demurrer filed,
then the court would, upon an inspection of the petition,
refuse to render a personal judgment against her.   It would be
folly to say that if she chose to file an answer, and did not
plead a defense which was *stated in the petition*, she waived
it.   It was unnecessary for her to rely upon a defense, by
answer, which the plaintiff had pleaded for her.   For this
reason, if a party seeks to recover on an obligation, but,
in attempting to state a cause of action, avers a state of
facts which show his right to recover is barred, a demur-
rer should be sustained.   The penalty for failing to file a
demurrer—even by one not under disability—is to pay the
costs occasioned by such failure.

The court is inaccurate in saying, "The pleadings do not
show that she [meaning Mrs. L. A. Turner] was a married
woman when the note was given."   In the amended peti-
tion, after stating that Q. M. Turner was interested with
L. A. Bradford as a partner in the business that was being
carried on in Bradford's name, and that they demanded that
Bradford & Turner secure them in the payment of the sums
advanced, it is averred "that both Bradford and Turner at
that time gave plaintiffs the pledge of their individual crops
of tobacco, and that defendant Mrs. L. A. Turner, in order
to make the pledge of *her husband* binding, joined in said
pledge to the plaintiffs.   And as this was not sufficient to
satisfy the plaintiffs, or to secure them in their debt, the
defendants Bradford and L. A. Turner made, executed,
and delivered the promissory note sued on, for the purpose
of securing plaintiffs' *debt*, or any debt that might be due
them for advances made Bradford & Turner."   The lan-
guage shows that  she was the wife of Q. M. Turner when
she executed the note, as she then signed a paper to *make*

*the pledge of her husband binding.* Besides this, there is a stipulation in the note in suit which shows she was a married woman when she signed the note, and it is as follows: "Mrs. L. A. Turner signs this note as a *feme sole*, and binds her estate for its payment." Whilst this stipulation is not set out in the petition, accompanied with a statement of facts showing she had been empowered to do business as a *feme sole* by judgment of a court of equity, so as to show she was bound on the note, still the fact is made to appear that she was then a married woman. However, independently of the stipulation in the note, the petition as amended, shows the plaintiff was not entitled to a judgment against her. Unless Mrs. L. A. Turner alleged some fact which made plaintiff's petition good, it matters not how many defenses she may have interposed; she did not lose her right to insist in the court below, or here, that the plaintiff had not stated a cause of action against her. This court in many cases has held, although no defense was made in the court below, if plaintiff failed to state a cause of action, the judgment must be reversed. Section 386, Civ. Code Prac., referred to by the majority, is applicable to this case, because it provides that judgment shall be given for the party whom the pleadings entitle thereto, though there may have been a verdict against him. Without going into a discussion of the question at length, for the purpose of and the effect of the act of March 15, 1894, on the rights of married women, it can be said, and this court has so held, it is not retroactive. If a contract made by a married woman before it became a law did not bind her personally, no personal judgment could be rendered against her. Neither does the act attempt to provide a *remedy* for the enforcement of antecedent contracts. The remedy for enforcing contracts re-

mained as it existed before the enactment of the law. The law does not free a woman from the disabilities of coverture. It simply gives her the right to contract (with specified qualifications), and to sue and be sued as to her property, only in so far as she is capable of contracting and being contracted with. If the statute denies her the right to enter into certain contracts, she is as powerless as she would have been under the former law to make such contracts binding, and the courts are as powerless to enforce them now as they were under the old law. If the law denies her the right to make a certain contract now, it follows that she can not be sued as a *feme sole*; and, as to that particular contract, she has the same protection before the law, and in the courts, as she previously had. Her emancipation from the disability of coverture is not general, but qualified.

· The note in suit was executed by Mrs. L. A. Turner to guarantee the payment of a debt of her husband. Even if it had appeared that the note had been executed since the act of March 15, 1894, became a law, there could not be a recovery against her (section 2127, Ky. Stat.), unless her estate had been set apart, by deed or mortgage, or other conveyance, for that purpose. The present statute does not affect the question of Mrs. L. A. Turner's liability on the note, or make valid the judgment rendered on it; nor would the note be enforceable if it had been executed under the same condition under the present statute. Therefore it is certainly erroneous to conclude that she is not entitled to relief because the disability of coverture is removed as to some matters, though not as to a contract like the one under consideration. Under the statute in force at the time the note was executed, the courts would have refused to enforce a judgment on it, although the

record failed to show Mrs. L. A. Turner was a married woman when she signed it, and under the present law the note is not enforceable. Still the court has taken the indefensible position that, because the statute removed her disabilities of coverture as to some matters, therefore she is not entitled to be relieved of the judgment because she did not plead and prove a fact which the plaintiff *pleaded and proved for her*. Even if the pleadings had not shown she was a married woman when the note was executed, but the fact appeared in the evidence, the court should have refused to render the judgment against her, which, under many adjudications of this court, is void. At common law it was not necessary for a *feme covert* sued upon a contract made during coverture to plead it, as she could rely upon it in evidence under the general issue. At common law, in an action when the plea was *non assumpsit* or *non est factum* coverture could be shown by evidence, without plea, to defeat a recovery. This practice in England was somewhat changed by rules which certain judges were authorized to and did make by virtue of an act of Parliament.