Blakeley, &c. v. Adams. (Case No. 2.)

CASE 53—ACTION BY JOHN C. ADAMS AGAINST W. H. BLAKELEY AND HETTIE S. BLAKELEY UPON A PROMISSORY NOTE AND TO ENFORCE A MORTGAGE LIEN.—MAY 23.

## Blakeley &c. v. Adams. (Case No. 2.)

APPEAL FROM WARREN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFF AND DEFENDANTS APPEAL.    REVERSED.

USURY—PAYMENT BY SURETY—ESTOPPEL OF PRINCIPAL TO PLEAD USURY AGAINST SURETY.

Held:    In an action on a note executed by the obligor to reimburse the payee for money paid as the obligor's surety, the obligor is not estopped to plead that the debt paid by the surety embraced usury, and to resist a recovery to that extent, unless it is made to appear that he stood by and permitted the surety to pay the debt in ignorance of the fact that it embraced usury.

JOHN M. GALLOWAY, ATTORNEY FOR APPELLANTS.

Appellee in his petition alleges that the consideration of the note for $3,908.35 sued on, was the payment by him as surety for appellants and upon no part of which he was bound except as surety.

Mrs. Blakeley, in her answer pleads that she signed the note to Adams, as surety for her husband and that Adams knew it and denies that the note was given for anything Adams had paid as surety for her and her husband, or that he ever paid any debt as surety for her, or was such surety, and she alleges that she

Blakeley, &c. v. Adams. (Case No. 2.)

was co-surety with Adams on all of said debts, and her husband was sole principal, and that Adams knew this and she pleads her coverture, etc.

And in a separate paragraph she alleges that each one of said debts which Adams claims to have paid and which made up the consideration of and for the note sued on, contained a large amount of usury, and she asks that said usury be purged.

W. H. Blakeley also filed answer pleading usury in said note sued on, and on the same day Mrs. Blakeley filed rejoinder to the reply of plaintiff, in which she reiterates that she was only surety and her husband the principal in all of said claims, and denies that she is estopped from pleading and relying upon the fact that she was only surety in said debts, or from the plea that said debts contained usury that she should not be compelled to pay.

To this answer of W. H. Blakeley and rejoinder of Mrs. Blakeley, plaintiff filed a general demurrer, which the court erroneously sustained, and defendants declining to plead farther, the court rendered a personal judgment against W. H. Blakeley for the debt sued on $3,908.35 and adjudging a lien on the four parcels of land for same.

Two parcels of this property belonged to W. H. Blakeley and the other two parcels, the Stallard Springs land, and the Dishman Mill property, belonged to Mrs. Hettie S. Blakeley. This judgment we seek to reverse.

For the purpose of demurrer, it stands admitted that these notes which Adams claims to have paid, and upon which he and Mrs. Blakeley were, from their beginning down through all removals and changes, co-obligors, and that they and each of them was in part made up of usury, which illegal consideration went to make up the note sued on.

## AUTHORITIES CITED.

McRae v. Gunter, 14 R., 5; Hill v. Cornwell, 95 Ky., 536; Lueking's Admr., v. Giggs, 12 Bush, 298; Hart v. Hayden, 79 Ky., 346; Rudd v. Planters' Bank, 78 Ky., 513; Fitzpatrick v. Apperson Exor., 79 Ky., 272; Flannery v. Three Forks Bank, 21 R., 626; Kendall v. Crouch, 88 Ky., 199; Moore v. Vance, 3 Dana, 362; Morton v. Legrand, 2 Litt., 327; Kentucky Statutes, sec. 2119; Browning v. Thompson, 13 B. Mon., 387.

C. P. MOTTLEY AND W. B. GAINES, FOR APPELLEES.

## POINTS AND CITATIONS.

Usury can only be recovered from the lender or forbearer. Kentucky Statutes, sec. 224.

In a suit upon a note renewed to the assignee, usury paid. to the payee of original note can not be pleaded as a defense. Stone v. McConnell, 1 Duv., 55.

The execution of a new note to a third person is a discharge of the first note. Cases cited above. Breckinridge v. Churchill, 3 J. J. M., 12.

A principal can not plead usury against his surety who has paid the debt, for any usury paid by the debtor to the payee in the note. McRae v. Gunter, 14 Ky. Law Rep., 5.

OPINION OF THE COURT BY JUDGE BURNAM.

This action was brought by the appellee, John C. Adams, against W. H. Blakeley and wife, Hettie S. Blakeley, upon a note for $3,908.35, dated April 3, 1900, and due one year after date, and secured by a mortgage upon three separate tracts of land. He alleges that the consideration of the note was the payment by him of judgments which were rendered against him as security for the defendants in the case of J. C. Adams v. W. H. Blakeley, etc., in favor of P. J. Potter & Son for $1,550, the Warren Deposit Bank for $830. Potter, Matlock & Co. for $497, T. J. Smith & Co. for $411.76, and the Warren Deposit Bank in its case against N. H. Thompson for $552.48; that to secure the payment of the notes the defendants executed and delivered simultaneously a mortgage on certain tracts of real estate belonging to the appellant Hettie, which he seeks to enforce. The appellant Hettie S. Blakeley admits the execution of the note and mortgage, and alleges that it was for money paid by J. C. Adams as security for her husband, W. H. Blakeley, but alleges that she was a co-security of plaintiff for her husband on all of the debts paid by him, and that no personal judgment was ever rendered against her on any of them, and charges that each of the debts contained a large amount of usury, which had either been paid or added to the principal at the renewal, and prays that all

the claims be purged of usury. Appellee interposed a general demurrer to the answer, which was overruled, and subsequently filed a reply, in which he says that on the 5th day of May, 1899, he instituted a suit in the Warren circuit court as surety for Hettie S. and W. H. Blakeley, requiring the payees in the notes upon which he was surety to collect same and to enforce a mortgage given to protect him as surety; that the defendant Hettie filed her answer in that suit, and asked the court to refer the case to the master commissioner to ascertain upon what notes plaintiff was bound, both for her and her husband, and which were covered by the mortgages executed by her; that the commissioner reported that he was bound on all of the notes which went to make up the obligation sued on, and this report was confirmed without objection. And he pleads that she is now estopped from denying that she was bound thereon. And in the second paragraph of his reply, he alleges that in the former suit an agreed judgment was entered, in conformity with the master commissioner's report. In the third paragraph he denied that there was any usury in the debts which made up the note sued on, but says that, even if they contain usury, appellant is estopped from claiming or pleading it by the execution of the obligation sued on. The affirmative averments of the reply were denied by rejoinder, and appellant denies that she is estopped from pleading usury by the execution of the note. A general demurrer was sustained to the rejoinder, which was carried back to the answer, and a judgment rendered in accordance with the prayer of plaintiff's petition. The law is well settled that a surety to a contract tainted with usury can avail himself of the defense of usury to the same extent

that his principal could, and if he pays such debt with knowledge of its usurious character he can not recover such usury from the principal, but can only recover what the creditor could have recovered either against the principal or surety. He stands in no better attitude, but is entitled to recover such usury back from the creditor if he so elects. See Brandt, Sur., 215; Jones v. Joyner, 8 Ga., 562; Mims v. McDowell, 4 Ga., 182; Whitehead v. Peck, 1 Kelly, 140; Kirkpatrick v. Wherritt, 46 Ky., 388. In the latter case it was expressly held that a surety who had paid usury for his principal had the right to sue for and reclaim it from the creditor, unless he had been repaid it by his principal. And this court in a long line of decisions has held that the renewal of a note tainted with usury is not a payment of the usury, and that limitation as to it does not then begin to run. See Rudd v. Bank, 78 Ky., 513; Fitzpatrick v. Apperson's Ex'x, 79 Ky., 272 (2 R., 249). But it is contended that, by the execution of the note sued on by appellants to appellee in payment of the various notes taken up by him as surety, they have lost their right to have the usury purged from the notes; and to support this contention we are referred to the cases of Breckenridge v. Churchill, 26 Ky., 11, Stone v. McConnell, 62 Ky., 54, Clark v. Rodes, 75 Ky., 13, Kendall v. Crouch, 88 Ky., 199 (10 R., 993) 11 S. W., 587, McCrae v. Gunter's Ex'rs (14 R., 5) 18 S. W., 1034, and Mann v. Bank, 104 Ky., 852 ( 20 R., 1033) 48 S. W., 413.

The facts in the case of Breckenridge v. Churchill were as follows: Gwathmey and Anderson owed Churchill $2,596. Churchill was indebted to Alexander S. Bullitt, as guardian of Eliza Prather, and at his instance Gwathmey executed his note to Bullitt with Breckenridge as his surety, in consideration of the note of Anderson and

Blakeley, &c. v. Adams. (Case No. 2.)

Gwathmey and in discharge of the debt due by Churchill to Bullitt. Gwathmey became insolvent, and Breckenridge was compelled to pay to appellee the whole amount of the note. He thereupon filed a bill in chancery against Churchill and Bullitt to obtain relief in consequence of the usury contained therein. It was held that the execution of the new note to Bullitt was a payment and discharge of the Churchill note, and that, the assignee having received the first note from his assignor for a valuable consideration, it was not contaminated with usury, as by taking the new note he discharged the surety and released his assignor from liability. In Stone v. McConnell it was held that where a grantor assigned to her ward on his arrival at age a note on which usurious interest had been paid to her, and which one of the obligors subsequently took up by executing a new note to the ward, in an action by the latter on the new note the defendants could not set up usury paid the grantor. In Clark v. Rodes it was held that, as between the maker and payee of a note, a judgment thereon in favor of the assignee against the maker which released the assignor from liability on his assignment was equivalent to the execution of a new note by the maker to the assignee, and that the right of the maker to sue the original payee and recover usury contained in such note accrued at the time the judgment was rendered against him. It will be observed that, in all these cases, the assignee was an entire stranger to the original transaction between the payee and obligor, and acquired the obligation for a valuable consideration, and it was held that the renewal of his obligation by the maker to the assignee released the assignor and was a new contract with a new party, which merged his claim for usury. The facts in the case at bar are

wholly different from those in any of these cases. There
is no question of the rights of a party who was a stranger
to the original transactions, and who has acquired the
original notes for a valuable consideration. No new party
was introduced by the execution of the last note; no new
consideration passed. The payee in the previous notes
was simply dropped out, and the name of the former sure-
ty substituted therefor. This arrangement did not de-
prive appellee of any of the rights previously enjoyed by
him, and created no new equities in his favor against the
appellants. In Fitzpatrick v. Apperson's Ex'x, 79 Ky.,
272 (2 R., 249), it was held that the mere change of the
payee or a part of the obligors by renewal was not a pay-
ment of usury, and, if usury in the old debt be carried
into the new obligation, so as to constitute a part of the
sum agreed to be paid by it, the usury should be extract-
ed on plea of the debtor. And the same doctrine was an-
nounced in Kendall v. Crouch, 88 Ky., 199 (10 R., 993)
(11 S. W., 587); Shirley v. Stephenson (20 R., 767) (47 S.
W., 581); Hart v. Hayden, 79 Ky., 346 (2 R., 359). In the
latter case it was held that, if the fact that the claim was
tainted was disclosed by the record, the chancellor should
purge the claim of such usury, although the debtor refused
to make the defense. It is very earnestly insisted, how-
ever, that the question here involved was decided in Mc-
Rae v. Gunter's Ex'rs (14 R., 5) (18 S. W., 1034), and
Mann v. Bank, 104 Ky., 852 (20 R., 1033), 48 S. W., 413.
An examination of these cases will show the facts to be
wholly different. In McRae v. Gunter's Ex'rs, the surety
on a note which was secured by a mortgage paid it off at
the express request of the principal with the accrued usu-
rious interest, and took a mortgage from the principal to
indemnify him; and it was held that the usury would not

be purged at the instance of the junior mortgagee, who occupied no better attitude than the original debtor, and that the original debtor, when he indemnified the surety, had a remedy for his usury against the original creditor. The facts in the case of Mann v. Bank were very similar. In that case the debtor, Mann, sold a tract of land owned by him to Mimms, the surety, in consideration that the surety would pay off a debt to the bank on which he was bound. He did so, and Mann thereupon instituted a suit against the Bank of Elkton to recover usury which he had paid on the notes taken up by Mimms. It was held that he was entitled to recover against the bank for usury previously paid by him to it on the debt so paid by his surety. It is not pleaded in this case that the appellant Hettie S. Blakeley or her husband ever requested appellee to take up the notes on which he was bound as their security. On the contrary, it appears from the reply filed in the case that the judgments were rendered against the appellee in a suit instituted by him for their settlement against the creditors, and no judgment was ever rendered against Hettie S. Blakeley. No question of usury was involved in that case. The only purpose in the reference to the master commissioner was to ascertain the debts on which the appellant Hettie was bound, which were covered by the mortgages in which she united.

If a principal requests his surety to pay a debt which contains usury, or stands by and permits him to do so in ignorance of the fact that it contains usury, and thereafter executes his own obligation to the surety, he can not rely upon the defense of usury in an action against him by the surety for indemnity; nor can a principal set off, against a note which has been paid by his surety, previous usurious interest paid by him to the creditor to

which the surety had no notice. But if usury was knowingly paid by appellee, the mere fact that appellants subsequently executed a note therefor will not estop him from relying upon this defense.

For reasons indicated, the judgment is reversed, and cause remanded for proceedings consistent with this opinion.

Whole court sitting.

Judges Paynter, White and Hobson dissent.

Judge Hobson's dissenting opinon:

Appellee, Adams, filed the first of these actions May 5, 1899. He alleged in that action that he had signed a number of notes as the surety of W. H. Blakeley and Hettie S. Blakeley; that he had been sued on the notes, and judgments had been given against him, and he had been compelled to pay the judgments; that he had paid them for W. H. Blakeley and Hettie S. Blakeley, and no part of the money had been repaid to him. He asserted a lien on certain land, and prayed for personal judgment and the enforcement of the lien. The notes are filed with the petition and are all signed thus: "W. H. Blakeley, Hettie S. Blakeley, J. C. Adams." Mrs. Blakeley, under the statute then in force, could sue and be sued as a single woman. She filed an answer in which she denied some of the allegations of the petition, and the case was referred to a commissioner, who reported that Adams had paid the money on the notes as the surety of W. H. and Hettie S. Blakeley, and that they were all included in the mortgage. A written contract was then made, by which Adams accepted a note for $3,908.35, due one year after date, and all matters of defense were waived except the question of his having a lien on the Hazelip

Blakeley, &c. v. Adams. (Case No. 2.)

property; and this, by the agreement, was to be submitted to the court. Subsequently, the action on this question was submitted to the court, and judgment was entered in favor of Adams. From this judgment W. H. and Hettie Blakeley prayed an appeal to this court. This terminated that action and settled all matters of controversy there between Adams and Mrs. Blakeley. When the time of credit secured by the agreement with Adams had expired, and his debt still remained unpaid, he filed the second of these actions to enforce the written contract. He was then met by the plea that the original notes which he had set up in his petition in the other case, and which he had paid as surety for Mrs. Blakeley, contained usury paid to the holder of those before Adams was sued upon them. To this plea Adams replied, setting up the estoppel by the proceeding had in the former case, and the court held the estoppel good. The question before us is, was this correct?

If the notes which Adams had paid were for any reason unenforceable, and he had paid money which he was not legally bound to pay, this defense should have been presented in the suit which Adams brought to recover the money which he had paid for Mrs. Blakeley and as her surety. His right of action in that suit was for money paid for Mrs. Blakeley and at her request. It was a suit upon the implied contract to reimburse him. If there was a want of consideration for the debt or any reason why she should not reimburse him, that reason should have been set up in that action. She could not set up part of her defenses there, and litigate them or agree on a judgment to be entered, and after this, when the judgment is sought to be enforced, go back and set up a defense that ought to have been presented then. Turner v.

Gill (105 Ky., 414) (20 R., 1253) (49 S. W., 311); Bethel v. Durall (22 R., 1081) (61 S. W., 699).

The defense now made is in effect that, on account of usury contained in them, the notes paid by Adams did not amount to $3,908.35; that Adams was to this extent not legally bound to pay the creditors, and Mrs. Blakeley was therefore not legally bound to pay him, and her note to this extent is without consideration. If this was true the defense should have been set up in the first action and was concluded by the settlement then made; for a litigant can not, when sued upon a cause of action, settle the case, and so get time on the debt, without being concluded on all defenses then existing against the payment of the debt. The note for $3,908.35 which Mrs. Blakeley executed to Adams is based on a good consideration—the settlement of that suit and the getting of 12 months' time on the debt. It is true a compromise of usury will not be enforced, but this was not a compromise of usury. No usury will be paid to Adams when the note for $3,908.35 is collected. He will only be repaid the money he has paid out. If any usury was embraced in the original debt, that usury was paid to the holders of the notes when Adams paid off the judgments rendered against him. If he had included in the note for $3,908.35 usurious interest up to the settlement on the amount he had paid, then the settlement would have been a compromise of usury; but when this was not done, and the only thing put in the note was the amount he had paid and legal interest, the settlement by Mrs. Blakeley was simply a waiver on her part to insist on an objection that part of the money had been paid by the surety when he was not legally liable for it, and this waiver she made to get the suit settled and time given on the debt. There

Blakeley, &c. v. Adams. (Case No. 2.)

was, therefore, no vice in the contract. If she had paid
Adams the note for $3,908.35 at maturity, could she with-
in a year have sued him to recover usury embraced in the
original notes? The right to recover usury exists only
against the usurer, not against one who has only gotten
back the money he has paid out with legal interest. The
statute neither by its language nor spirit sustains the
result contended for. It is as follows: "Legal interest
shall be at the rate of six dollars upon one hundred dollars
for one year and at the same rate for a greater or
less sum, and for a longer or shorter time." Kentucky
Statutes, section 2218, "All contracts and assurances
made directly or indirectly, for the loan or for-
bearance of money, or other thing of value, at a
greater rate than legal interest, shall be void for the
excess over the legal interest. The amount loaned with
legal interest may be recovered on any such contract or
assurance; but if the tender refuse, before suit brought,
a tender of the principal, with legal interest, he shall
pay the costs of any suit brought on such contract or as-
surance." "A court of equity may grant relief for any
such excess of interest, and to that end compel the neces-
sary discovery from the lender or forbearer." "Such ex-
cess of interest may be recovered from the lender or for-
bearer, although the payment thereof was made to the
assignee." "Partial payment on a debt bearing interest
shall be first applied to the extinguishment of the inter-
est then due." Kentucky Statutes, section 2219. This
makes 6 per cent. the legal interest, and declares all con-
tracts for a greater rate void for the excess over the legal
interest. The amount loaned, with legal interest, may be
recovered; if the lender refuse a tender of the principal
with legal interest, before suit brought, he must pay the

cost of the suit; and usury which is paid may be recovered from the lender or forbearer, though paid to the assignee; but the statute does not make the surety liable where he has paid the debt for his principal and the principal afterwards reimburses him in the amount he has paid out. In McCrae v. Gunter's Ex'rs (14 R., 5) (18 S. W., 1034), a note which contained usury was paid by the surety, who took a mortgage from the principal to indemnify him. In a suit by the surety to foreclose the mortgage it was pleaded that there was usury in the debt which the surety had paid. The plea was held bad, although made by a junior mortgagee, and although the principal's right to recover the usury from the creditor was barred by limitation. The court said: "The party receiving the usury is alone responsible, but the endeavor is to make third parties liable, for the reason, doubtless, that time bars the recovery as against the original creditor." See, also, Deatly v. Ralls, 3 Ky. Law Rep., 386. That case is not near so strong for the surety as the one before us, for here there is not only a note, but an agreed judgment fixing the amount of the debtor's liability to the surety, and after this, for the first time, a plea of usury is presented. The decision rests on the rule universally recognized, that, where the surety pays the debt without notice of usury in it, the principal can not set up the usury as a defense when sued by the surety for reimbursement. Ford v. Keith, 1 Mass., 139, 2 Am. Dec., 4; Thurston v. Prentiss, 1 Mich., 193; Whitehead v. Peck, 1 Ga., 140; Jones v Joyner, 8 Ga., 562: Jackson v. Jackson, 51 Vt., 253, 31 Am. Rep., 688; Maples v. Cox, 74 Ga., 701; Roe v. Kiser (Ark.), 34 S. W., 534, 54 Am. St. Rep., 288; 1 Brandt, Sur., section 215. The reason for this rule is that the surety pays at the request of his principal, and a man

can not set up usury against one who pay the debt at his request. Wendlebone v. Parks, 18 Iowa, 546; Polhill v. Brown, 84 Ga., 338, 10 S. E., 921; Pence v. Christman, 15 Ind., 257. In this case, Adams having, so far as appears, no notice of usury in the notes, and they purporting on their face to be valid, he was justified in paying them, and his payments must, under the authorities, be considered as made at the request of Mrs. Blakeley, and she can not set up usury in the notes against him. Adams did not take an assignment of the notes and sue as the assignee of the original creditors, but it will illustrate the question to see how he would stand if he had sued as assignee of the notes in the first action. Nothing is better settled in Kentucky than that, if Adams had brought the first action as assignee of the notes, he could not, upon the facts stated, be now met with the plea of usury. The court held that the execution of the new note assigned to his ward on arriving at age a note which contained usury. The ward took a new note from the obligor, and when a suit was filed on this note he pleaded usury. The cour held that the execution of the new note was a payment of the old one, and that the assignee was not contaminated with the usurious contract. This case followed Breckenridge v. Campbell, 3 J. J. Marsh, 12. and it has been followed in a number of cases since. Thus, in Beall v. Bethel, 3 Ky. Law Rep., 397, a note was given for moonshine whisky, and was assigned. The obligor executed a new note to the assignee. It was held that the new note was valid. This was followed in Lucas v. Ramsey, 11 Ky. Law Rep., 902, Burks v. Cheek, 11 Ky. Law Rep., 953, and in other subsequent cases, such as Stephenson v. Shirley (22 R., 1159, 20 R., 767) (60 S. W., 387). One reason given for the rule is that the assignee

has lost his recourse on the assignor, and, as he has been induced to do this or alter his position for the worse by the act of the obligor in giving him the new note, the latter will not be allowed to set up an infirmity in the note, and thus throw a loss on the assignee which he might not have sustained otherwise. The same principle applies here, for Adams, when he accepted the new note of Mrs. Blakeley, and waited a year upon her promise to pay the debt, according to the agreed judgment, lost all opportunity to reclaim the usury he had paid on the original note, and if the plea of usury is now sustained against him he will suffer a loss without remedy.

None of the cases cited in the opinion are in point; nor has any case in any other State been found sustaining the conclusion of the court. The cases cited were all against the usurer or person who had received the usury. The case of Shirley v. Stephenson, supra, was again before this court, and, it appearing that the assignee had paid value for the notes, it was held the usury could not be pleaded against her after a renewal of the notes to her. The court is certainly driven to a most anomalous position when it rests its decision on the ground that an innocent surety who has paid the debt of his principal stands in a less favored position than an assignee who has shaved the note or bought it at a discount, and in effect that, if Mrs Blakeley had paid Adams at the maturity of the $3,908.35 note, she might within a year have sued him and recovered the usury in the original notes which he had paid. The consideration of the note for $3,908.35 was not usurious. It represented only the amount Adams had actually paid out, and was supported by the loss of the money to him, the giving of time on

the debt, and settlement of the former suit. See Mann v. Bank, 104 Ky., 852 (20 R., 1033) (48 S. W., 413).

The usury statute is not essentially different from that against gaming. Kentucky Statutes, section 1956. If this had been a gaming debt, and Adams as surety had paid the note, and had then sued for reimbursement and obtained a judgment for the money he had paid out as surety, and collected the judgment, would anybody suppose that he could be sued and made liable for the amount so collected, although he was in good faith throughout the transaction, and only was his friend's surety as an accommodation without knowing the real consideration of the note? Yet this is in effect the case we have; for it is not alleged that Adams knew of any infirmity in the notes. On their face they purported to be for a valuable consideration, and when he paid the debts, as he innocently did, the Blakeleys had an adequate remedy against the lenders who had collected the usury, at least after they settled with Adams; and it is their own fault, and not his, if they have sustained any loss. There is nothing in the record to indicate that there was anything in the transaction of a device to hide the usury, or to protect the usurer in retaining it, and the surety should not suffer.

I therefore dissent from the opinion of the court.

Petition for rehearing by appellee overruled.